# CHARLESTON.

### F. R. Tuning *v.* Ida M. Tuning.

### Submitted February 28, 1922. Decided March 7, 1922.

1. Divorce—*Husband Held Not Entitled to Divorce on the Ground of Desertion.*

   When the husband consents to and aids his wife in removing from the home then provided to another in another county, and agrees to follow her there soon afterwards, and he does go and for a short time lives and cohabits with her at the new place of residence, and where with his consent she has contracted to live and take care of an uncle during his life on condition that he will deed her his property including the house in which she resides, she is not guilty of deserting her husband at the time of such removal, entitling him to a divorce from the bonds of matrimony, or to any relief against her.　(p. 460).

2. Same—*Defendant wife Held Entitled to Divorce for Husband's Refusal to live with and Support Her.*

   On the other hand, if after such removal by the wife, the husband refuses to contribute to his own or the support of his wife and children at the new place of residence, and because she refuses to support him there without such assistance he then leaves her and refuses to live with her, and is guilty of other conduct evidencing such intent, he is guilty of deserting her, entitling her upon a cross-bill showing such facts, to a decree of divorce from bed and board, and for alimony against him.　(p. 461).

3. Same—*Facts Held to Show wife Entitled to Alimony in a Gross Sum, Payable in Installments, on her Divorce from Bed and Board.*

   In such case, where it appears that the wife has been obliged to work out for many years to obtain money to suitably maintain and support herself and their children, and to assist and has thereby assisted materially in paying for the farm on which they have lived for many years and for other property, the court on decreeing her a divorce from bed and board may award her a reasonable sum in gross in lieu of alimony, payable in installments, and make the same a lien on the husband's real and personal estate.　(p. 462).

Appeal from Circuit Court, Randolph County.

Bill by F. R. Tuning against Ida M. Tuning for divorce. From a decree therein, the plaintiff appeals.

*Affirmed.*

*W. B. & E. L. Maxwell,* for appellant.

*H. G. Kump,* for appellee.

MILLER, JUDGE:

On the bill of plaintiff and cross-bill answer of defendant, replied to specially, the court below by the decree complained of denied plaintiff a divorce a vinculo as prayed for, and granted defendant, as prayed for by her, a divorce from bed and board against the plaintiff, and further adjudged that he pay her as alimony the sum of $1500.00, in three installments of five hundred dollars ($500.00) each, the first within ninety days, the second on or before one year, and the third on or before two years, from the date of the decree, with interest on each installment at the rate of six per centum, and that the same constitute a lien on all his property, both real and personal, and that in default of payment she should have the right by execution, or by such other process as might be efficacious in the premises, to enforce the same, and that she also recover her costs incurred in this suit.

The ground for divorce alleged and relied on by the plaintiff in his bill is that the defendant wilfully and without reasonable cause deserted and abandoned him on the first day of October, 1915, and thereafter wholly refused to live and cohabit with him as his wife. The bill was sworn to by plaintiff; but it is conceded by his counsel that the proof wholly fails to sustain any desertion on October 1, 1915. Indeed plaintiff admits that he not only consented to, but aided the defendant in removing herself and their two children from their residence on the farm near Pickens, in Randolph County, to the village of Frenchton, in Upshur County, where defendant had contracted to move into the house then owned by one Hull, an uncle, and take care of him for the rest of his life, on his agreement to convey her his property, and with the understanding with plaintiff, that as soon as he could sell

or lease the home farm in Randolph County, he should also come and reside with her and their children in Upshur County. The plaintiff, after this evidence and his admissions, did not amend his bill as to the time and place of defendant's alleged desertion, but on this hearing, and apparently in the circuit court, he relied wholly on her supposed desertion of him on November 11th and 12th, 1917, at which time at his request she had gone to Pickens to execute with him a deed for a part of their land in Randolph County. Plaintiff makes no allegations, however, that on this occasion there had been any resumption of residence in Randolph County. True, they occupied the same room, as both admit, in a hotel where he was staying, but simply as guests of the hotel.

In her cross-bill answer defendant denies desertion as alleged in the bill, and as grounds of divorce from bed and board against plaintiff, she alleges non-support or inadequate support of herself and children for many years; that in order to provide such support and to get suitable clothing for herself and children, she was obliged to work out as a domestic servant in the homes of neighbors; and that in this way she also contributed largely to the payment for the farm near Pickens purchased shortly after their marriage. She further alleges that she provided practically all the furniture for the house, and he practically nothing; that some time before they moved to Frenchton plaintiff whipped their son inhumanly with a pair of check lines, and that she told him about the time of going to Frenchton that she could no longer endure his treatment of herself and children, and if she was to be required to clothe herself and them, she would have to go to her own people, and that it was then that the agreement was made that they should remove to Frenchton, and that he should remain on the farm until the following July, 1916, when he might dispose of the stock and property thereon, and lease or rent the farm and himself come to Frenchton; that accordingly they did move to Frenchton, but that plaintiff failed to come in the spring as agreed, but remained at Pickens until the fall of 1916, when he disposed of the personal property on the farm and did go to Frenchton

and resided and cohabited there with her for a short time, when she told him if he remained he would have to assist in providing the home and maintaining her and her daughter, that she could not support him, and that he would have to pay his board, which he refused to do; that she is now without any means of support except such as she derives from her own efforts in keeping a boarding house, and by her own labors and the assistance she receives from her uncle; that in the fall of 1917, plaintiff represented to her that he was in need of money and induced her to join in a deed for the farm, which she agreed to do on condition that he would pay her one-third of the purchase money, to which he agreed, but after obtaining her signature refused to do; that since then the plaintiff has refused to live with her; and that she has never at any time received any of the purchase money or other money from him, but on the contrary he has appropriated all of said money, and has been selling off the personal property on the farm, and has sold timber, or is about to do so, on the remaining land at $2500.00, all of which defendant assisted him in acquiring, with the object of depriving her of her portion thereof.

Has plaintiff made out a case for divorce? He does not pretend to have requested defendant in November, 1917, to return to Randolph County, or to have provided her a place of residence there. The most that appears in the record on this question is that some two years after they moved to Frenchton and the defendant had been at work there keeping a hotel and working out her contract with Hull, he may have requested her by letter to return to Randolph County, but he admits he consented to her going to Frenchton and entering into the contract with her uncle, and that they should reside there; and she says, and she is corroborated by her son and daughter, that he only visited them occasionally at longer or shorter periods and never contributed anything to their support; and that all that he was requested to do when he came to them at Frenchton was to pay his board, which he declined to do, and was told she would not support him there, but that he must contribute to their support to that

extent.  His contention.is that she drove him away and would
not allow him to stay, "board or no board."

We think it clear that there was no desertion of plaintiff
by defendant in Randolph County or elsewhere, and that the
court was clearly right in denying him any relief.   Their
removal to Frenchton with plaintiff's consent, and where he
lived and cohabited with her for a time at least, precludes
him from obtaining a divorce from her on that ground.  *Mc-
Coy* v. *McCoy,* 74 W. Va. 64.   And that there was no subse-
quent desertion of him by her in Randolph County is quite
manifest from the evidence already referred to.   With his
consent they had established a residence in Upshur County.
She had the right to remain there, certainly until he provided
her with another home and requested her to go there.   There
is no evidence that he did this.   His pretenses that he wrote
her to return, without providing a place, if true in fact, we
think must be regarded as feigned and not sincere, for he
knew she was under contract to stay in Upshur County and
would lose the property contracted for there unless she ful-
filled the contract, entered into with his consent.

The next question is, can the decree in her favor be sus-
tained?  We think the question is a close one.   Desertion
implies intent to desert.   It is agreed by both parties that
they lived and cohabited as man and wife in Upshur County,
and that when they moved there in October, 1915, it was with
the understanding that they should take up their residence
in Frenchton. The plaintiff was there on a number of occa-
sions, but did not go at the time originally contemplated, as
she alleges, nor did he remain there for any considerable
length of time; and barring a few farm provisions furnished
shortly ater going there, plaintiff never contributed any-
thing to the support of his family. His going or remaining
away under the circumstances, and his failure and refusal
to contribute anything to the support of the family, though
professing his ability to do so, even to the extent of paying
his board, is a circumstance, we think, which may be con-
sidered on this question of desertion.   The least that could
have been expected of him was that he should pay his board.

He could not have expected his wife, under the circumstances, to work and support him, and that in comparative idleness, while living with her in the hotel or boarding house. He testified he earned about 'seventy-five dollars a month by his labor when at work, not including his income from the farm and money invested. If he had provoked the wife to order him away unless he paid his board, he could have adopted no better way than to go home and refuse to aid her in any way in the maintenace of the family.

Besides this conduct and his remaining away for the greater part of the time, and the fact which we think augurs intent to desert, is the fact that he has been disposing of his real and personal property and converting it into money, manifestly for the purpose of putting it beyond her reach or depriving her of any of the benefits thereof. He pretends that he provided clothing and provisions for the family while residing on the farm, but his evidence is not specific as to any actual expenditures on that account. He acknowledged that his wife and children were supported by her a large part of this time. by labor at the home of one Pickens, from whom they purchased the farm, and that in that way defendant contributed to the payment for the farm and the maintenance of the children.

On this evidence the court below has decreed defendant a divorce from bed and board. We can not say that the decree is not based on sufficient evidence of intent to actually abandon her. He has not returned to the home in Frenchton since he went away after being requested to contribute to the support of his family by paying board. He was obliged to pay for his keeping some place. His wife he would not pay for the same service when she was providing the home and means of living. Where the court below has found from the evidence the facts constituting good grounds for divorce, the evidence tending strongly to support such finding, the decree will not be reversed on the question of fact. *Deusenberry* v. *Deusenberry,* 82 W. Va. 135.

The next question is, can the decree for a gross sum in lieu of alimony be sustained? Generally, it is conceded, alimony

should be in periodical payments, of reasonable sums, out of the husband's income, and that gross sums or particular property should not be decreed. *Reynolds* v. *Reynolds*, 68 W. Va. 15; 2 Am. & Eng. Enc. Law, (2nd ed.) 129; 1 R. C. L. 926, secs, 74, 75. But as noted in *Reynolds* v. *Reynolds, supra,* there are exceptions to this rule, as where the property was obtained with the wife's money or by the help of her exertions and labor. Is the case here presented one for the application of the exception to the general rule? Our statute section 11, chapter 64 of the Code, is quite broad. It says that in decreeing a divorce *a vinculo* or *a mensa et thoro* "the court may make such further decree as it shall deem expedient, concerning the estate and maintenance of the parties, or either of them," etc. As said in *Reynolds* v. *Reynolds, supra,* reviewing the history of the statute, the power to provide alimony did not originate with the statute, but existed independently of the statute, and is based on the legal obligation of the husband, as incident to the marriage, to maintain and support his wife. Manifestly, the court was persuaded to decree a gross sum to the wife in this case on the ground that she contributed largely by her labors outside of the family home, in the acquisition of the land and personal estate which the evidence showed, or tended strongly to show, the plaintiff was disposing of and converting into money with some purpose, and not unlikely to put it beyond the reach of his wife. He refused, after obtaining her signature to the deed for a large part of the land, to fulfill his promise to pay her one-third of the purchase money. And without doubt he was endeavoring to sell his other property and convert it into money. What was to prevent him from going beyond the court's jurisdiction, or from squandering or disposing of the money, so as to deprive defendant of all interest therein? The record shows that he had personal estate consisting of notes and United States bonds and lands and coal interests, amounting in all to four to five thousand dollars, and that of these he had convertible cash assets amounting to at least three thousand dollars, and that he was earning about seventy-five dollars per month.

Sums in gross for alimony have been allowed under such circumstances in other jurisdictions. It was done in Illinois, where the statute is substantially the same as ours. *Plaster* v. *Plaster,* 47 Ill. 290, where it was held that such decree would preclude the wife from thereafter having the decree so modified as to give her any sum additional for the support of herself or children. In California the statute said: "When a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support during her life or a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects." The supreme court of that state held that the court had the power under this section to require a gross sum to be paid the wife. *Robinson* v. *Robinson,* 79 Cal. 511. In Iowa there is a similar holding under a statute no broader than ours, in which case specific property was set aside as alimony. *Twing* v. *O'Meara,* 59 Iowa, 326. So also in Wisconsin we find that a decree for a gross sum in lieu of alimony was sustained under a similar statute. *Hooper* v. *Hooper,* 102 Wis. 598. And in North Dakota, the statute, though not specifically authorizing it, was held broad enough to justify a decree for a gross sum for the support and maintenance of the wife. *De Roche* v. *De Roche,* 12 N. D. 17, 1 Ann. Cas, 221. See also the note to this case at page 224, citing many cases, both from states with statutes like New York authorizing such decree, and from other states, including those cited here, with statutes like or similar to our own, held broad enough to justify such decree.

Our conclusion, under all the facts and circumstances of this case, is that the decree below should be affirmed.

*Affirmed.*