STEFONICK, Appellant, v. STEFONICK, Respondent.

No. 8572

Submitted December 14, 1945. Decided March 30, 1946.

167 Pac. (2d) 848

See also, 167 Pac. (2d) 867.

Messrs. Gilbert & Gilbert, of Dillon, and Messrs. Gunn, Rasch & Gunn, of Helena, for appellant.

Messrs. Maury & Shone, of Butte, and Mr. John Collins, of Dillon, for respondent.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Appeal by the defendant from a decree and judgment dissolving the marriage between the parties and awarding the plaintiff $27,416.60, which judgment was declared to be a lien on all real and personal property of the defendant. This amount is in addition to $2,808.40, theretofore paid by defendant to plaintiff under order of the trial court, as support, attorney's fees and other expenses incidental to the action.

The pleadings, evidence and findings are unusually voluminous, although, as will hereafter appear, the issues which we believe to be material are simple. The complaint alleges the marriage between the parties on September 3, 1940, and that no issue resulted. It then alleges the infliction of extreme cruelty by the defendant upon plaintiff at stated times during the years 1940, 1941, 1942 and 1943, in that defendant during such period repeatedly cursed plaintiff and applied vile and abusive epithets

at her; threw buckets at her; pulled her from a horse which she was riding; flourished a shotgun before plaintiff and threatened to kill her; knocked her down and kicked her, resulting in serious injury; stated to plaintiff that he wished he had never seen her and wished he could get rid of her and that at some time he would do so; on numerous occasions falsely accused plaintiff of unchastity; habitually cursed, scolded, berated and nagged plaintiff without cause or provocation, threatened her with bodily injury, and inflicted bodily injury upon her, by reason of which during all of said time, she has remained in fear of the defendant and has suffered, and still suffers, from bodily pain and nervous disorders; compelled plaintiff to perform a man's work upon his ranch, in addition to usual housework, by reason of which her health and strength have been undermined. The complaint follows the wording of the statute in alleging that by reason of the course of conduct described the peace of mind and happiness of the plaintiff have been destroyed, and the purpose and legitimate objects of the marriage have been defeated, and the continuance of the married relation between the parties has been rendered perpetually unreasonable and intolerable to plaintiff. It is further alleged that defendant is possessed of property of the clear value of $75,000, the bulk of which was accumulated during the married life of the parties, and to the accumulation of which the efforts of plaintiff have largely contributed. The prayer of the complaint is for a decree of divorce, with an equitable property settlement, and for costs, attorney's fees and maintenance of plaintiff pending determination of the action.

After hearing on an order to show cause, the trial court ordered payment by defendant of attorney's fees, costs, and the sum of $175 monthly for the support of plaintiff until determination of the action.

Defendant by answer denies all of the acts of cruelty alleged in the complaint, and admits owning property of a value not in excess of $50,000. For a further answer and defense defendant alleges that prior to September 3, 1940, the parties were

contemplating marriage and were desirous of settling forever the property rights which would result from the contemplated marriage; that for the purpose of avoiding the difficulties or differences which might arise concerning such property rights of either of them, the parties, on September 3, 1940, entered into an agreement in writing, which was recorded in the office of the Clerk and Recorder of Beaverhead County on January 8, 1941, a copy thereof being annexed to the answer as Exhibit A; that said contract is in force and effect and that defendant has fully performed the same. That in said contract the plaintiff waived and relinquished any and all rights she might otherwise acquire in and to the property of the defendant by reason of the marriage of the parties, and agreed with defendant that if either party "shall institute an action for divorce, the party bringing such action covenants and agrees to pay all expenses incurred in such action, and covenants and agrees that the other party shall never be called upon to pay alimony, separate maintenance, costs of suit or any other expense incurred by the party bringing the action." (The portion quoted is from the contract.) That by reason of such agreement the plaintiff is precluded from now asserting any right or interest in or to defendant's property, or from demanding or receiving any part of defendant's estate or any alimony, costs or attorney's fees from the defendant.

For a cross-complaint defendant alleges extreme cruelty by plaintiff toward defendant, as evidenced by her actions and conduct therein particularized. For reasons to appear we deed it unnecessary to elaborate upon these allegations.

By reply to defendant's cross-complaint plaintiff denies all general and specific allegations of extreme cruelty therein set forth. In her reply, as a defense to defendant's further answer, plaintiff alleges the prior marriage of the parties in March 1938; that thereafter they lived together as man and wife, and through the efforts of both commenced to accumulate real and personal property; that prior to December 1939 the defendant conceived a scheme to acquire all of the property in his own name, and to oust the plaintiff from any and all rights which

she had, or might have, in the property accumulated by their joint efforts, in pursuance of which a separation agreement was executed by the parties on January 3, 1940; that on the same day defendant fraudulently, and without the knowledge of plaintiff, obtained a divorce from her; that in the divorce action she was represented by W. G. Gilbert, Esq., acting as her attorney under written authority signed by her upon misrepresentation by defendant's attorneys that it was a part of the separation agreement; that the parties did not thereafter live separate and apart, but continued to live together as man and wife, and that plaintiff remained in ignorance of the divorce decree until September 2, 1940, when she was informed thereof by a neighbor. It is further alleged that when questioned on that date the defendant admitted to plaintiff that he had obtained a divorce, and suggested that the parties remarry, and they proceeded to Salmon, Idaho, where they were married the following day, which was the date of the property settlement contract above referred to, dated September 3, 1940; that plaintiff never knowingly signed such contract, and that if her signature appears thereon, which she denies, it was obtained by some fraudulent trick, scheme or device practiced upon her by the defendant or someone acting for him; that such contract was recorded, and that she learned of its existence from a source other than the defendant; that there was no consideration for such contract, and that the sum of $1,000 mentioned therein as the consideration for her execution thereof was never paid to or received by her; that plaintiff had no knowledge of the existence of such purported contract until the summer of 1943, at which time defendant admitted its existence, and promised to cancel and remove it of record.

By reply to plaintiff's defense to the defendant's further answer, defendant denies the material allegations thereof.

At the conclusion of the trial the trial court refused findings and conclusions offered by both parties, and on August 26, 1944, filed its findings of fact and conclusions of law. Thereafter the court made an order enjoining the defendant from

disposing of or encumbering any of his property, except for the payment of the judgment herein.

The findings and conclusions, like the pleadings and evidence, are extremely voluminous, the record consisting of some nine hundred pages. Since we think that extraneous issues were injected into the case, we shall discuss only the findings, conclusions and evidence which affect the two material questions raised, viz., (1) Is the evidence sufficiently substantial to justify the decree of divorce in plaintiff's favor, and (2) was the trial court justified in awarding judgment for the plaintiff in an amount equivalent to one-half of the increase in the value of defendant's property from the date of the first marriage until their separation, or at all.

Condensed to their essence, the findings are that the parties have been husband and wife since the 20th day of March 1938; that between that date and the month of June 1943 they lived and cohabited together as man and wife, and by their equal joint efforts during such period a large amount of property has been earned and accumulated in the name of the defendant, to the earning and accumulation of which the work and labor of the plaintiff has contributed equally with that of the defendant.

As to the grounds for divorce, as alleged in the complaint, the court found that throughout the married life of the parties the defendant repeatedly and often threatened, beat, kicked and otherwise maltreated the plaintiff, and continually and habitually cursed, scolded and applied vile epithets to her, and falsely accused her of unchastity; that he required her for unreasonably long hours to perform, and she did perform, labor in his household and as a common laborer upon his ranch, and to lift burdens beyond her strength.

Findings V, VII and VIII have to do with two so-called separation agreements, neither of which would have been signed by the plaintiff, the court finds, had she known or understood the legal meaning of the provisions.

Findings VI, X and XI concern the obtaining of a decree by

the defendant, divorcing the parties, which the court found was obtained by fraud and without the knowledge or consent of the plaintiff, she only learning of it shortly prior to the 3rd day of September, 1940, at which time defendant admitted its existence. The court also found that subsequent to the date of such decree the parties continued to live and cohabit together as man and wife, until they were remarried at Salmon, Idaho, on September 3, 1940.

Finding XII concerns a contract, dated September 3, 1940, which provides that the marriage then contemplated by the parties shall not in any way change their legal rights; ''that neither should thereby acquire any rights of dower, courtesy, homestead, maintenance, inheritance, descent, widow's allowance, or other statutory right, or rights of survivorship, or under the laws of descent and distribution.'' The court found that under the strict terms of this agreement, the plaintiff waived all and any rights in and to the property earned and accumulated by the joint efforts of the parties, and all rights that she might acquire under the laws of this state by reason of such contemplated marriage; with the exception that the defendant agreed to pay to plaintiff the sum of $1,000, and that he would provide a home and meet all of the usual living and household expenses of the parties; and agreed that in the event the parties are living together as man and wife at the time of his death, he will leave a will devising and bequeathing to plaintiff one-third of his estate after the payment of his debts and expenses of administration. The court further found that, while plaintiff denied signing such agreement, she did in fact sign it at the earnest solicitation and persuasion of the defendant; that ''at the time she signed the same, she did not know or realize because of her agitated and nervous state of mind, nor was she informed by her husband or by anyone, that she was signing away all her marital rights to maintenance and support from her husband, and all her rights in and to the monies, real or personal property accumulated or to be accumulated by the joint work and effort

of herself and husband; and the court further finds that if she had so known, she would not have signed the same."

Further, that the plaintiff was, at the time she signed the agreement, in a highly nervous and agitated state, caused by the extremely hard work which the defendant required her to do, by the ill treatment she had received from defendant, and particularly caused by her discovery of the divorce proceedings of January 3, 1940, and that consequently she had since been living with a man not her husband; "and the court further finds that the plaintiff was not capable of giving, and that she did not give, her consent to the terms, conditions, waivers and provisions contained in the said prenuptial agreement."

By Findings XV, XVI and XVII the court found that the $1,000 mentioned in the agreement was not paid by defendant, and was not received by plaintiff; that the plaintiff did not make or execute the will mentioned in the agreement; and that the prenuptial agreement was and is wholly without consideration.

The court further found that the plaintiff has no property of her own, and no means of support; that since the 1938 marriage the value of defendant's property has increased to the extent of $60,450, which increase has been contributed to by the plaintiff equally with her husband; that plaintiff is entitled to have awarded to her one-half of such increase, or $30,225, from which should be deducted all amounts theretofore paid to plaintiff as support, suit money or counsel fees.

Conclusion of law No. I is to the effect that the 1938 marriage has at all times been in full force and effect, and never legally annulled or set aside. By numbers II and III the court concludes that the two separation agreements of December 1939 and January 1940, and the prenuptial agreement of September 3, 1940, are now and have been at all times, null and void, and of no force and effect.

Judgment and decree, in accordance with the findings and conclusions, was entered on September 22, 1944, and this appeal followed.

As above indicated we think the first question for determination is that of the sufficiency of the evidence to support the decree of divorce in plaintiff's favor. We shall not encumber the record with a recital of the evidence in this regard relied upon by plaintiff, but shall refer to such instances thereof as we think amply sustain the allegations of the complaint and the findings of the trial court. For example, plaintiff testified that in September 1940 defendant became enraged because a hog-feed barrel was overturned, and threw a bucket of water at her. On that occasion he said: "You dirty black bitch. You are the one that caused those pigs to upset that, go ahead and put it up again." In October following he pulled her from a horse, in connection with which she testified:

"Q. At that time was there any name calling? A. There was. He said to me—my husband, 'What in the hell are you doing here?' I said 'I am looking for the milk cow.' He said 'Goddamn you, get off of that horse, you will not find her.' I said 'I have to go get her, she has to be milked.' He said, 'You dirty bitch,' and he pulled me off of the horse."

Concerning an incident in April 1941 plaintiff stated:

"In April, 1941, I had a hen set that had some little chickens under her. I always had a big black and white cat for a pet and she started attacking those chickens and my husband took a shot gun and shot this cat through the stomach. She didn't die right away and he took her and hit her against the pole and killed her. I remarked it was cruel and I didn't see how he could do it. He turned, 'If I had some shot in the shot gun, I wonder how you would look jumping like that cat jumped.' I said, 'Now, Pete, you would not do a thing like that.' He said, 'I would just as soon shoot you as that cat.'

"Q. Tell the Court whether he made any move with the gun. A. Yes, he pointed the gun towards me and waved it around in the air. I don't know whether he had a shell in it or not."

Another incident testified to by plaintiff occurred in December 1942 when defendant kicked her in the leg and knocked her through a door, resulting in bruises and the development of

phlebitis, for which she was hospitalized. In March 1943 he threatened, she stated, to kill her because she asked that a log house they proposed to occupy be sealed on the inside. In August 1943 defendant required her to take a wagon wheel to town for repair, her testimony being as follows:

"Q. Was there any name calling at that time and if so you may state. A. It was a common thing for my husband to call me a dirty black bitch * * * He said, 'you dirty black bitch, you get into that pickup and go down and take that wheel off,' and I said, 'I will,' and I did."

During the same month another accident occurred after plaintiff had reported to defendant that his pigs were trespassing on a neighbor's property, concerning which she testified:

"When Pete came in I explained to him about the pigs and they should be penned up and he cursed me and told me I should herd those pigs. When I told him I was not able to herd them and do every thing else—I was not able to. The doctor had been there that day and I had a spell with my heart. He grabbed me off the bed.

"Q. And did what? A. He hit me several times in the face and tore my clothes."

On different occasions defendant imputed unchastity to plaintiff, the details of which are better not repeated here.

No useful purpose would be served in detailing other instances of personal injuries, actual and threatened, by the defendant. Testimony in this regard was corroborated by at least two other witnesses. All of this testimony was categorically denied by the defendant. The evidence with respect to the allegations of extreme cruelty was conflicting, but the evidence adduced by plaintiff, if believed by the trial court, amply sustained such allegations and the court's findings. Under such circumstances this court will not disturb such findings. In re Choiniere's Estate, Mont., 156 Pac. (2d) 635, and cases cited. It is true that plaintiff's testimony was apparently weakened by evidence of her expressions and actions subsequent to the separa-

tion in 1943 and prior to the trial, consisting principally of letters and other written communications from her to the defendant, but this goes to the weight of the evidence and credibility of the witness, which are matters for determination by the trial court. Such determination will not be interfered with by this court on appeal. Dockins v. Dockins, 82 Mont. 218, 266 Pac. 398; In re McCue, 80 Mont. 537, 261 Pac. 341.

The further question for determination is whether the trial court was justified in awarding judgment for plaintiff, as alimony, for approximately $30,000 in a lump sum.

There is much in the record concerning the divorce obtained by defendant in January 1940 and the status of the parties during the period thereafter until their remarriage in September 1940. Respondent insists that the common-law relationship of man and wife existed during that period, and that thus they have been continuously married since the ceremony in 1938. Presumably this stand is taken in support of respondent's contention that during the period from the date of the first marriage until the separation preceding the institution of this action, the value of plaintiff's property greatly increased, due to their joint and equal efforts, and thus she is entitled to be awarded one-half of such increase. In view of our decision with respect to the award made by the trial court, we think these matters become immaterial. In passing, we observe that the finding that such increase in value was the result of the joint and equal efforts of plaintiff and defendant is not justified or supported by the evidence.

As above indicated, the trial court concluded, as a matter of law, that the two separation agreements and the prenuptial agreement were null and void, the conclusion as to the latter being based upon the finding that it was and is without consideration. This agreement, in addition to the matters found by the trial court to be embraced therein, contains the following provision: ''11. In the event that either party shall institute an action for divorce, the party bringing such action covenants and agrees to pay all expenses incurred in such action, and coven-

ants and agrees that the other party shall never be called upon to pay alimony, separate maintenance, costs of suit or any other expense incurred by the party bringing the action.''

Appellant urges that the findings and conclusions of the trial court with respect to these agreements are not supported by substantial, or any, evidence, and therefore, cannot stand. In view of the evidence respecting these agreements, including the denial of the plaintiff that she signed the prenuptial agreement, we are inclined to agree with appellant on the point urged. However, for a reason not mentioned in the findings or conclusions, we must uphold the conclusion as to the prenuptial agreement, in so far as the provisions found in paragraph 11, above quoted, are concerned.

The court's finding that there was no consideration for the prenuptial agreement is based upon its findings that the $1,000, mentioned therein as the consideration, was not paid by defendant or received by plaintiff. While the evidence as to this $1,000 is somewhat obscure, we think that it establishes that a check signed by defendant, payable to plaintiff, in that amount, was delivered to plaintiff, but for some reason was not cashed by plaintiff, and that she never actually received the money. Her reason for not cashing the check and retaining the money is not apparent. The finding of lack of consideration is based also upon the failure of defendant to execute the will provided for in the agreement. However, since no time was specified for execution of the will, we think the finding is not supported on that ground.

Assuming that the prenuptial agreement was voluntarily executed by plaintiff (which assumption appears to be substantiated by the evidence), the question arises as to whether the same was and is contrary to public policy.

Appellant insists that, even though the consideration of $1,000 was never paid, the agreement itself, made in contemplation of marriage, was a good and sufficient consideration, citing as authority Seuss v. Schukat, 358 Ill. 27, 192 N. E. 668, 95 A. L. R. 1461; In re Onstot's Estate, 224 Iowa 520, 277 N. W. 563;

Hardesty v. Hardesty's Ex'r, 236 Ky. 809, 34 S. W. (2d) 442; and La Liberty v. La Liberty, 127 Cal. App. 669, 16 Pac. (2d) 681. In the Seuss case, supra, it is said [358 Ill. 27, 192 N. E. 671]: "Antenuptial agreements are not against public policy but, on the contrary, if freely and intelligently made, are regarded as generally conducive to marital tranquillity,and the avoidance of disputes concerning property. (Citing authority.) Marriage constitutes the consideration for the agreement and has been declared to be not only a sufficient consideration but also one of 'the highest value' (citing cases)." The agreement involved in the case cited provided that the prospective bride should retain after her marriage the power exercised by an unmarried person to dispose of her property, and that the prospective husband waived and released all rights which he might acquire through such marriage or as surviving husband, heir at law, or otherwise, to the property owned or thereafter acquired by her.

Marriage settlement contracts are permitted in this state by section 5804, Revised Codes, which provides: "All contracts for marriage settlements must be in writing, and executed and acknowledged or proved in like manner as a grant of land is required to be executed and acknowledged or proved." Section 5805 provides for the recording of the agreement in every county in which is situated land granted or affected thereby. Section 5806 provides that the recording or non-recording of the contract has a like effect as the recording or non-recording of a grant of real property. Section 5787 provides: "A husband and wife cannot, by any contract with each other, alter their legal relation, except as to property and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation." This section apparently does not apply to agreements made in contemplation of marriage.

It would thus appear that our statutes are silent as to the power of prospective husband or wife to contract as to future

rights of either except as they may affect real or personal property owned or to be acquired by either.

In 26 Am. Jur., sec. 275, p. 882, in a discussion of antenuptial agreements, it is said: "By such a settlement or agreement the parties may define their property rights in property existing or after-acquired, and they may vary substantially property rights which would otherwise arise on their marriage by operation of law, superseding, in a sense, statutes on that subject. They cannot, however, vary the marital personal rights and duties that arise on marriage by operation of law." Section 288 of this text states; "Overreaching, or abuse of the confidential relationship between prospective spouses, makes an antenuptial settlement or agreement voidable. Such a settlement or agreement, to be enforceable, must be fair, equitable, and reasonable in view of all of the surrounding facts and circumstances * * *. (Citing cases.)" In section 290 it is said: "However, adequacy of the provision for the wife is to be considered in connection with the question as to whether the contract is fair, and inadequacy of such provision gives rise to a presumption of fraud vitiating the agreement. The question of the adequacy or inadequacy of the provision must be determined largely in view of the facts and circumstances existing in the particular case."

In view of our decision that the decree of divorce must stand, ▮ the question of the validity of the antenuptial agreement as to the provisions for release of the rights of both parties in the property of the other, becomes a moot one. But this is not so as to the release of other statutory rights of the wife, purported to be released by the provisions of paragraph 11 of the agreement, above quoted. Even though it may not be apparent that the agreement was entered into by the husband in contemplation of a future divorce or separation, its terms obviously invite a divorce as a source of pecuniary profit to him. In common parlance he would have "everything to gain and nothing to lose" by bringing about such a condition of the marital relationship as would render divorce or separation proceedings by

the wife imperative. If plaintiff's testimony is to be given credence, defendant has accomplished just that result. If, as a result of his conduct, she is compelled to separate from him, or if he chooses to separate from or desert her, she would relinquish the agreed right to share under his will. Were she compelled to institute divorce proceedings, she would relinquish such right, and in addition all claim to his support and the right to alimony suit money and support prescribed by statute in cases where a divorce is granted for the fault of the husband.

In Hilbert v. Hilbert, 168 Md. 364, 177 A. 914, 919, 98 A. L. R. 1347, a similar contract was involved. The court said: ''The parties to this suit undertook to enter into the antenuptial contract, to which reference has been made, by the terms of which it is provided, in paragraph 5: 'In the event that unhappy differences should arise between the parties hereto, resulting in separation between the parties, no claim or demand shall be asserted or attempted to be asserted by either party hereto as against the other for alimony, counsel fees or the like,' etc.

''The appellant did not press this question in the Court of Appeals, or, it seems, in the lower court, and suffice it to say such contracts are held to be void as against public policy * * *.''

Considering all of the circumstances, and in view of the inadequacy of the property settlement to provide money for her support and for the costs of suit, we must hold that paragraph 11 of the agreement is contrary to public policy and void. It follows that the trial court was justified in declaring it unenforceable in that respect, and, therefore, in awarding alimony and suit money to plaintiff. The sole question remaining for disposition is whether the trial court properly awarded such alimony in a lump sum, in view of the Montana statutes and decisions.

Section 5771, Revised Codes, provides: ''Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage and to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court

may deem just, having regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects; provided, however, that upon proof of the remarriage of a divorced wife, after the final judgment in a divorce action, the court must order a modification of the judgment by annulling the provisions of the judgment directing the payment of money for the support of the wife.''

This statute clearly contemplates the allowance to the divorced wife of an amount suitable for her support during such period as the court may determine. The amount of the award is not a certain proportion of the husband's estate, but is to be determined by the equities of the case and the financial situation of the parties. Cummins v. Cummins, 59 Mont. 225, 195 Pac. 1031. The award here was admittedly based upon the increase in the value of the husband's property during the period of the marriage, found by the court to be due, in part, to efforts of the wife. Section 5797, Revised Codes, provides: ''All work and labor performed by a married woman for a person other than her husband and children shall, unless there is a written agreement on her part to the contrary, be presumed to be performed on her separate account.'' In construing this statute as to its effect on the common law rule, this court said, in Gates v. Powell, 77 Mont. 554, 252 Pac. 377, 380: ''At common law the husband, as a result of the marriage, was entitled to the services and earnings of his wife; and, even under statutes such as ours, enlarging the rights of married women, it is the duty of the wife, without compensation, to attend to all the ordinary household duties and labor faithfully in the advancement of her husband's interests. Thus the statute providing that the wife shall be entitled to her earnings for labor performed 'for a person other than her husband' does not change the rule respecting the services which she owes her husband as head of the family.'' See also Whitacker v. Whitacker, 52 N. Y. 368, 11 Am. Rep. 711; 41 C. J. S., Husband and Wife, sec. 17, p. 414.

It is well settled that in this jurisdiction alimony is in no way a property settlement, but is the provision made for the support

of the wife, State ex rel. Tong v. District Court, 109 Mont. 418, 96 Pac. (2d) 918, 921.

With reference to an award of alimony in a lump sum, this court said, in State ex rel. Tong v. District Court, supra: "This court has held on several occasions that it is inadvisable, except for special reasons and under special circumstances, to make an award of alimony in gross or in a lump sum. Bristol v. Bristol, 65 Mont. 508, 211 Pac. 205; Lewis v. Lewis, 109 Mont. 42, 94 Pac. (2d) 211. In the first cited case this court used the following language * * *: 'In a case of this kind where no complaint is made, as here, as to the husband's industry and financial ability, and where the property consists of but one parcel, the sale of which, in order to satisfy the judgment for alimony, would probably be necessary, we think it the better practice to make a monthly, or other periodical, allowance, to the end that the court can, from time to time, modify its order in these respects should changed conditions or circumstances make it advisable or necessary.' "

In Lewis v. Lewis, supra, it is said [109 Mont. 42, 94 Pac. (2d) 213]: "Thus, while alimony in gross is authorized by the statute (Nuhn v. Nuhn, supra [97 Mont. 596, 37 Pac. (2d) 571]), the better practice is to provide a monthly or other periodical allowance unless its payment would be endangered by the husband's lack of industry or financial ability (Bristol v. Bristol, 65 Mont. 508, 211 Pac. 205), or for some other compelling reason. Furthermore, if that danger can be obviated by requiring security, as provided by section 5772, Revised Codes, there are at least two reasons why a lump sum should ordinarily not be awarded. The first is that by so doing the court awards a definite judgment which, while intended primarily for the wife's support, is fixed without reference to her continuing need, so that she or her estate will have the benefit of it in spite of her remarriage, her acquisition of other property or income, or her death. The second is, assuming that by this award the court does not exhaust its power but can hereafter award further alimony by way of monthly or lump sum pay-

ments (see Bast v. Bast, 68 Mont. 69, 217 Pac. 345), and thus reserves the right to increase the alimony provision, it does, by an award in gross, to that extent deprive itself of the power to reduce the provision. Obviously, the court should, so far as possible, retain its power to modify the alimony provision either way, as circumstances warrant, in the interest of justice to both parties. It follows, therefore, that if monthly alimony can be secured in some way, a lump sum should not be awarded.''

It is true that the Nuhn case is authority for the awarding ██ ██ of alimony in a lump sum, under the provision of section 5771. When the decisions in that case, and the Cummins and Bristol cases, supra, cited as authority, were written, section 5771, Revised Codes 1921, was in effect. This section was amended in 1935, by adding the proviso requiring the court to annul the provisions of the judgment requiring the payment of support money, upon proof of the remarriage of the divorced wife. This provision, and the benefits of it accruing to the husband, might be effectively nullified by the award of a lump sum. This reason might well have been added to those expressed in Lewis v. Lewis, supra, against the award of a gross amount or lump sum. We agree with the reasoning of the Lewis case, and think that it is applicable to the circumstances of this case. While the terms of an award of alimony or support to the wife are generally a matter within the discretion of the trial court, such discretion must be supported, we think, by evidence as to the circumstances of the particular case. An award of a lump sum should be supported by some impelling reason for its necessity or desirability. Such does not here appear. Both parties are comparatively young, and lived together as man and wife no longer than five years. The record does not indicate any danger of failure of the defendant to comply with any judgment directing periodical payments for plaintiff's support; if desirable, they could be assured by the impression of a lien upon his property toward that end. Nor does any other compelling reason appear for an award of a lump sum. We think that the intention of the statute would be better fulfilled by the award-

ing of periodical payments for the support of the plaintiff until changes in her status or circumstances might require a modification of the judgment. It is highly desirable, under the circumstances of this case, that the trial court retain effective jurisdiction to so modify the judgment, should subsequent events or circumstances require or indicate such modification. The award of periodical payments for the wife's support will provide substantial justice, present and future, on both sides.

We think that the holding in Detert v. Detert, 115 Mont. 313, 142 Pac. (2d) 215, is not applicable to the facts of this case.

The cause is remanded with directions to modify the judgment by vacating the portion thereof directing the payment of a lump sum by defendant, and by directing, after a hearing, if necessary, the payment by defendant to plaintiff periodically, of such suitable allowance as the court may deem just for plaintiff's support (Sec. 6771, Rev. Codes), and the award of such costs and expenses of the trial as may be just and permitted by law. The judgment is in other respects affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris and Angstman concur.

Mr. Justice Adair (dissenting).

I am not able to concur in the modification of the judgment nor in the order of this court vacating and reversing that part of the judgment awarding alimony in gross to the wife.

The majority opinion concedes that under the evidence herein the wife is entitled to a decree of divorce because of the fault of her husband and that under the circumstances of the case she is entitled to receive alimony, but the majority opinion questions the *form* in which the alimony was allotted, in effect, holding that in making the award in gross the trial court was guilty of an abuse of the discretion reposed in it.

"Section 5771, Rev. Codes 1921, authorizes the allowance of alimony in a gross or lump sum." Bast v. Bast, 68 Mont. 69, 77, 217 Pac. 345, 347. "The allowance of money in a lump sum as alimony to the wife is authorized by our statute." Nuhn v. Nuhn, 97 Mont. 596, 603, 37 Pac. (2d) 571, 574.

By express statute (sec. 5771, Rev. Codes), "the power to make suitable allowance for the support of the wife during her life, having regard to the circumstances of the parties, was lodged wholly in the court below." Cummins v. Cummins, 59 Mont. 225, 195 Pac. 1031, 1032.

The amount of alimony which the wife should receive in a final decree of divorce "is to be determined by the equities of the case, having due regard for the financial condition and necessities of the parties." Wandel v. Wandel, 76 Mont. 160, 165, 248 Pac. 864, 865.

After hearing and considering the evidence the trial court made written findings of fact and conclusions of law and, in accordance therewith, rendered a decree awarding the wife an absolute divorce and judgment for alimony in gross in the sum of $27,416.60 in addition to the amount theretofore paid by the husband as temporary alimony, court costs and attorneys' fees.

It becomes the duty of the appellate court on this appeal to examine and review the trial court's findings, conclusions, decree and judgment but not to *revise* them. Except when not sustained by substantial evidence and upon a clear showing of an abuse of *discretion* in the making of the findings and the judgment based thereon, the members of this court may not properly stop to consider whether their individual or collective estimate of the alimony allowance corresponds with that of the trial court. Cummins v. Cummins, supra, 59 Mont. at page 229, 195 Pac. at page 1032.

Among the trial court's findings of fact are the following:

"I. That the plaintiff, Berta J. Stefonick, and the defendant, Peter Stefonick, inter-married at the City of Dillon, County of Beaverhead, State of Montana, on the 20th day of March, A. D. 1938, and ever since have been at all times, and now are, husband and wife.

"II. That the said plaintiff, Berta J. Stefonick, and the defendant, Peter Stefonick, cohabited and live together as husband and wife from the date of the said marriage on the 20th day of March, A. D. 1938, to the month of June, A. D. 1943,

and that the said defendant, Peter Stefonick, at all times acknowledged and represented that the said Berta J. Stefonick was his wife, during said period of time, and that he at no time denied that she was his wife; and that during the said period of time, plaintiff worked in the home and in the fields doing hard manual labor, and that by their joint efforts, a large amount of property, both real and personal, has been earned and accumulated in the name of the defendant, to the earning and accumulation of which the work and labor of the plaintiff has contributed equally with that of the defendant.

"III. That the said plaintiff, Berta J. Stefonick, has at all times herein conducted herself as a dutiful and loving wife, and has performed all of her marital obligations.

"IV. That throughout the married life of the parties hereto, the defendant repeatedly and often, threatened, beat, kicked and otherwise maltreated and mistreated the plaintiff, and that he continually and habitually cursed, scolded and applied vile epithets to her, and falsely accused her of unchastity; and that during said time, he required her for unreasonably long hours to perform, and she did perform, labor in his household and as a common laborer upon his ranch; and to lift burdens beyond her strength; and she did, throughout said time, perform such work and labor in the manner stated and as set forth and contained in the complaint of the plaintiff herein. The Court further finds that the evidence herein, free from legal objection, amply and by a preponderance thereof, sustains all of the allegations of the plaintiff's complaint. * * *

"XXIII. That at the time of the marriage of the plaintiff and defendant, on the 20th day of March, 1938, the defendant had, and was the owner of, property of a value not exceeding $14,649.00, and his debts were $6,000.00, and that his net worth was $8,649.00. That during the trial, the parties hereto stipulated in open court that the value of the property in the name of, and owned by the defendant, at the time of the trial, was the sum or amount of $69,099.50, over and above all debts and liabilities, and the Court adopts said stipulation and finds in

accordance therewith; and the Court further finds that the increase in the value and worth thereof from the said 20th day of March, 1938, to the date of the trial herein is the sum or amount of $60,450.00; that the plaintiff by her work, labor and industry in the home, and actual hard manual labor upon the said farm and ranch, has equally with her husband, contributed to such increase in the value thereof.

"XXIV. That no children have been born as the issue of said marriage.

"XXV. That at the time of the marriage of the plaintiff and the defendant, in the year 1938, the plaintiff was a strong and healthy woman, but that by reason of and as a proximate result of the ill-treatment given the plaintiff by the defendant herein, and the hard work she has performed for defendant during the period of their married life, that the plaintiff is ill in body and mind, unable to do or perform any hard work, and is not able to provide for herself the necessaries of life.

"XXVI. That the plaintiff herein has no property of her own, either real or personal, and has no means of support.

"XXVII. The Court is of the opinion that under the facts herein as found by the Court, and in view of the fact that at the time of the trial herein, the increase in the value of the property earned and accumulated during their married life, by the labor and work of the plaintiff and defendant, was the amount of Sixty Thousand Four Hundred Fifty Dollars ($60,-450.00), to which increase the plaintiff by her work and labor contributed equally with her husband, that the plaintiff is entitled herein to have awarded to her as alimony, one half of such increase, which is the amount of Thirty Thousand Two Hundred Twenty-five ($30,225.00) Dollars.''

Each of the above numbered findings is amply sustained by substantial evidence appearing in the record.

Among the trial court's conclusions of law are the following:

"V. That the plaintiff herein, Berta J. Stefonick, is entitled to a decree of absolute divorce from the defendant, Peter Stefonick.

508

"VI. That the plaintiff, Berta J. Stefonick, is entitled to a judgment and decree against the defendant, Peter Stefonick, in the sum of Thirty Thousand Two Hundred Twenty-five ($30,-225.00) dollars, from which should be deducted the amount paid by the defendant to the plaintiff since the commencement of this lawsuit, on the 7th day of September, 1943,.for suit money, support money and attorney's fees.

"VII. That the plaintiff should pay her own costs, expenses and attorney's fees in this action; and that the defendant pay his own costs, expenses and attorney's fees in this action."

The above numbered conclusions find support in the court's fact findings and in the law applicable thereto.

"On appeal to this court the presumption is that the decree and findings of the trial court are correct. (Citing cases.) The findings of the trial court must be sustained if they are supported by substantial evidence. (Citing cases.) All legitimate and reasonable inferences must be indulged toward upholding the findings. (Citing cases.) In case of any reasonable doubt as to the sufficiency of the evidence to sustain a finding, the appellate court should resolve that doubt in favor of the finding and, in reading the record and considering the evidence and inferences, the court should be realistic and practical. (Citing cases.)" Van Voast v. Blaine County et al., Mont., 167 Pac. (2d) 563; Id., Mont., 167 Pac. (2d) 572; Bickford v. Bickford, Mont., 158 Pac. (2d) 796.

In the exercise of its discretion in compelling the husband to make suitable allowance to the wife for her support, the trial court must have "regard to the circumstances of the parties respectively," sec. 5771, Rev. Codes, and in considering such circumstances it must be remembered that the plaintiff, Berta Stefonick, came into a court of equity complaining of cruel and inhuman treatment, including acts of personal violence, at the hands of her husband. From such treatment and acts she sought relief including divorce, a property settlement and such other relief as may be equitable.

The action was filed in the District Court of the Fifth Judicial

District in and for Beaverhead County. Peter Stefonick, the defendant husband, by answer and cross-complaint, denied the charges made against him, alleged cruelty on the part of his wife, and prayed that she take nothing by her complaint and that he be granted a divorce from plaintiff.

Eminent counsel were retained by each of the parties and the proceedings throughout have been bitterly contested.

The Honorable Lyman H. Bennett, district judge of the Fifth Judicial District wherein the parties reside, was disqualified by affidavit of plaintiff. The Honorable R. E. McHugh, district judge of the Third Judicial District, was called in and assumed jurisdiction but was subsequently disqualified by affidavit of defendant. Thereupon the Honorable. C. E. Comer of Missoula, a district judge of the Fourth Judicial District, was called in, assumed jurisdiction, tried the cause and on September 22, 1944, rendered a decree in favor of the plaintiff wife. Since then the defendant Peter Stefonick has been before the Supreme Court of this state in three separate causes relating to the proceedings in the trial court, viz.: First cause, entitled State of Montana ex rel. Peter Stefonick v. District Court et al., Mont., 157 Pac. (2d) 96, an original application for a writ to prohibit the Honorable C. E. Comer as district judge presiding, from hearing the wife's motion for her attorney's· fees and costs on this appeal; second, cause, entitled Stefonick v. Stefonick, 167 Pac. (2d) 867, wherein the husband appealed from an order fixing the attorney's fees and costs to be paid by him to his wife on defendant's appeal from the decree and judgment; and third, this cause, Cause No. 8572, wherein the husband has appealed from the decree and judgment granting the wife a divorce and awarding her alimony in gross.

The transcript of the record certified to this court from the court below on this appeal comprises four typewritten volumes and discloses that the cause was most carefully tried by both counsel and the learned district judge presiding.

Doubtless the foregoing circumstances had considerable influence in causing the trial court, in the exercise of its sound

discretion, to determine that in this particular case the equities of the case require an award of alimony in gross.

Tiffin v. Tiffin, 209 Mich. 232, 176 N. W. 435, 436, decided February 27, 1920, is most similar in many respects to the instant case. There the wife charged the husband with personal violence and many other marital offenses. By answer the husband denied these charges and by cross-complaint he charged his wife with extreme cruelty and other acts of marital misconduct. Two marriage ceremonies had been performed, the first in September, 1891, and the second in November, 1896. The divorce suit was filed in February, 1915, after which the parties resumed marital relations under an attempted reconciliation which proved unsuccessful and by a supplemental complaint filed in November, 1915, the wife alleged that the conduct of the husband was such that she found it impossible to live with him, whereupon the case proceeded to trial. In approving an award of alimony in gross the Supreme Court of Michigan, considering the circumstances of the parties and giving considerable of the testimony, said:

"The record is a large one, and in both the pleadings and the testimony of the parties there is much of acrimony, consisting of accusation and counter accusation. In fact it is seldom that a record shows so much of crimination and recrimination by the parties as is here shown. * * *

"We have read the entire record with great care, and have duly considered it, but we are of the opinion that no possible good could follow the spreading of the differences of the parties upon the pages of the reports of this court. The record shows much incompatibility, but we think it shows much more.

"* * * We are of the opinion that plaintiff is entitled to a decree of divorce upon the ground of personal violence amounting to extreme cruelty.

"As this court said in Utley v. Utley, 155 Mich. 258, 118 N. W. 932, we repeat here:

"'We are impressed that the parties should be relieved entirely of the relations entered upon with their marriage, and

that a disposition of the property should be made which will render personal relations of any kind unnecessary and unlikely to occur.'

"The parties have drifted so far apart, and such bitterness of feeling exists between them, that we are satisfied they can never live together in any proper manner. * * *

"The property of the defendant—all accumulated after the marriage—consists of an apartment building known as 1870 Woodward avenue, Detroit. The title to this property is in defendant. * * * The plaintiff asks that this real estate be divided between the parties, subject to a part of the mortgage. We think that this would be impracticable for the reasons stated. All personal relations should be severed, in our opinion.

"We think that a decree from the bonds of matrimony should be granted to the plaintiff; that she should be awarded permanent alimony in the sum of $5,000, to be paid by the defendant within four months from the date of the decree of this court, the said amount to be and constitute a lien upon all of the real estate of the defendant, including the said premises, which award and allowance shall be in lieu of dower of the plaintiff in the property of the defendant and in full satisfaction of all claims which the plaintiff may have in any property which the defendant owns or may hereafter own, or may have an interest in. In our opinion such award is preferable to an undivided interest in the property. It is better for both parties. * * * Plaintiff will be awarded the costs of both courts, including an attorney or counsel fee of $250, which will be in full of all attorney fees, and the same will be a lien upon defendant's property until paid."

In the beginning the rule adopted by the courts was that all alimony should be paid periodically. This early rule was formulated at a time when the term "alimony" meant an allowance for the support of a wife living apart from her husband under a legal separation or divorce from bed and board, under which the relation of husband and wife continued to exist. At that time the courts did not recognize any duty on the part of

the husband to support a fully divorced wife. All this has long since been changed. In modern times the statutes of most states have empowered the courts to recognize the continuing duty of the husband to support his divorced wife where the divorce is granted for an offense of the husband. Sec. 5771, Rev. Codes. At the present time comparatively few decrees provide for legal separation or for divorce from bed and board. Most decrees provide for complete dissolution of the marriage, i. e. for absolute divorce, and the legislatures of most of the states have taken into account such changed conditions including a changed attitude on the part of the public concerning legal separation and divorce, by enacting statutes which recognize the continuing duty of the husband to make suitable allowance to the wife for her support in actions wherein a divorce is granted for an offense of the husband, sec. 5771, Rev. Codes, and such allowance represents a property settlement as well as an allowance for support and maintenance and the form and amount thereof rests in the sound discretion of the court having regard to the equities of the case and the financial condition of the parties, the court being empowered to make the allowance either in a gross sum or in payments at periodical intervals. Robinson v. Robinson, 1889, 79 Cal. 511, 515, 21 Pac. 1095; Huellmantel v. Huellmantel, 1899, 124 Cal. 583, 57 Pac. 582; Honey v. Honey, 1923, 60 Cal. App. 759, 214 Pac. 250; Scheibe v. Scheibe, 1943, 57 Cal. App. (2d) 336, 134 Pac. (2d) 835; Enders v. Enders, 1922, 36 Idaho 481, 211 Pac. 549; Openshaw v. Openshaw, 1932, 80 Utah 9, 12 Pac. (2d) 364; Schuster v. Schuster, 1936, 88 Utah 257, 53 Pac. (2d) 428; Golden v. Golden, 1937, 41 N. M. 356, 68 Pac. (2d) 928; Evans v. Evans, 1933, 182 Wash. 297, 46 Pac. (2d) 730; Christenson v. Christenson, 1926, 141 Wash. 226, 251 Pac. 111; Wilhelm v. Wilhelm, 1928, 126 Ore. 388, 270 Pac. 516; Fuller v. Fuller, 1944, Or., 151 Pac. (2d) 979; Drake v. Drake, 1911, 27 S. D. 329, 131 N. W. 294; Roubicek v. Roubicek, 1945, 246 Ala. 442, 21 So. (2d) 244; Smith v. Rogers, 215 Ala. 581, 112 So. 190; Plunkett v. Plunkett, 223 Ala. 400, 137 So. 24; Cecil v. Cecil, 200 Ky. 453, 255 S. W. 64; Lyon v. Lyon, 243 Ky.

236, 47 S. W. (2d) 1072; Skidmore v. Skidmore, 1935, 261 Ky. 327, 87 S. W. (2d) 631; Turner v. Ewald, 1943, 290 Ky. 833, 162 S. W. (2d) 181; Yung v. Yung, 1943, 294 Ky. 369, 171 S. W. (2d) 1017; Lydick v. Lydick, 1938, 147 Kan. 385, 76 Pac. (2d) 876; Stuckek v. Stuckek, 1928, 249 Ill. App. 598; McKey v. Willett, 248 Ill. App. 602; Kraft v. Kraft, 193 Iowa 602, 187 N. W. 449; Brown v. Brown, 222 Mass. 415, 111 N. E. 42; Baird v. Baird, 1942, 311 Mass. 329, 41 N. E. (2d) 5; White v. Shalit, 1938, 136 Me. 65, 1 A. (2d) 765; Bickle v. Bickle; 1936, 196 Minn. 392, 265 N. W. 276; Longbotham v. Longbotham, 119 Minn. 139, 137 N. W. 387; Tiffin v. Tiffin, 209 Mich. 232, 176 N. W. 435; Hagerty v. Hagerty, 1923, 222 Mich. 166, 192 N. W. 553; Lemp v. Lemp, 249 Mo. 295, 155 S. W. 1057, Ann. Cas. 1914D, 307; Miller v. Miller, 173 Miss. 44, 159 So. 112; Hopkins v. Hopkins, 174 Miss. 643, 165 So. 414; Baker v. Baker, 2 Ohio App. 321, 24 Ohio Cir. Ct. R. 376; Howe v. Howe, 1918, 21 Ohio N. P. N. S., 324; Winslow v. Winslow, 133 Tenn. 663, 182 S. W. 241, Ann. Cas. 1917A, 245; Eaton v. Davis, 1941, 176 Va. 330, 10 S. E. (2d) 893; Tuning v. Tuning, 90 W. Va. 457, 111 S. E. 139; Dunlap v. Dunlap, 1945, 145 Neb. 735, 18 N. W. (2d) 51; Martin v. Martin 1945, 145 Neb. 655, 17 N. W. (2d) 625.

The power of the court to award permanent alimony is purely statutory.

Section 5771 of the Revised Codes of 1921, originally enacted as Section 193 of the Montana Codes of 1895, was adopted from and is identical with section 139 of the California Civil Code which section had theretofore been construed by the Supreme Court of California in the early case of Robinson v. Robinson, 79 Cal. 511, 21 Pac. 1095, decided July 1, 1889.

Section 5771, Revised Codes of Montana of 1921 (same as sec. 139 Cal. Civ. Code), reads:

''Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage and to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circum-

stances of the parties respectively, and the court may, from time to time, modify its orders in these respects.''

In Robinson v. Robinson, supra [79 Cal. 511, 515, 21 Pac. 1096], under the identical statute (sec. 139, Cal. Civ. Code) the trial court made an allowance to the wife in a gross sum. In approving the award and affirming the judgment the Supreme Court of California said: ''The question is, Had the court the power, under this section,. to require a gross sum to be paid to the plaintiff for her support? We think the language broad enough to confer this power. It will be observed that the allowance may be for the wife's support *during her life,* and there is nothing limiting it to periodical payments. If it were so limited, it would be possible, where no security had been required, for the husband to dispose of all his property and then go away or die and thus defeat the allowance altogether. And this has been the practical construction of similar statutes in many other states. In Burrows v. Purple, 107 Mass. [428], 432, Justice Gray, speaking for the court, said: 'This court has long been vested, by successive statutes, with authority, upon granting to a wife a decree of divorce, either from bed and board or from the bond of matrimony, to allow her reasonable alimony out of her husband's estate. And the practical construction of these statutes has always been that such alimony might, at the discretion of the court, be ordered to be paid in one gross sum, instead of being made payable at stated periods. In many other states, also, the word ''alimony'' is commonly used as equally applicable to all allowances, whether annual or in gross, made to a wife upon a decree of divorce under similar statutes;' (citing cases).

''* * * So in Piatt v. Piatt [9 Ohio 37], the same term was used in the statute, and it was held that under it the court was authorized to render a decree for a gross sum, or for installments payable at stated intervals.''

The California statute (sec. 139, Cal. Civ. Code) having been adopted after its interpretation by the highest court of that state, it will be presumed that in enacting such statute (sec.

5771, Rev. Codes, 1921), the Montana legislature adopted the construction so placed upon it by the Supreme Court of California. H. Earl Clack Co. v. Staunton, 105 Mont. 375, 383, 72 Pac. (2d) 1022; Easterly v. Broadway Garage Co., 87 Mont. 64, 285 Pac. 172.

Thus under section 5771, Revised Codes of 1921, which was the law of this state, on December 21, 1922, when the case of Bristol v. Bristol, 65 Mont. 508, 211 Pac. 205, was decided, in construing an identical statute, it was held ''that the allowance may be for the wife's support *during her life,* and there is nothing limiting it to periodical payments.'' Robinson v. Robinson, supra. Since the statute (sec. 5771) empowered the trial court, in cases where a divorce is granted for an offense of the husband, to make such suitable allowance to the wife for her support as the court may deem just, having regard for the circumstances of the parties, the court was required to exercise its *discretion* in determining what, if any, award should be made and the form, terms and conditions thereof. Nuhn v. Nuhn, supra.

In Lewis v. Lewis, 109 Mont. 42, 45, 94 Pac. (2d) 211, 213, this court recognized that, ''It is well settled that where a wife is given a divorce, *the awarding of alimony is largely a matter of discretion* in the district court * * * to be determined by the equities of the case and the financial condition of the parties.'' (Emphasis mine.)

In Cummins, v. Cummins, supra, this court held that in making an award of alimony the court was required to exercise its discretion and that when once made the appellate court could revise such award and judgment ''only upon a clear showing of an abuse of discretion in their making.''

Since the legislature by the enactment of the statute made the awarding of suitable allowance to the wife a matter of discretion in the trial court without in any wise or manner limiting such allowance to periodical payments (Robinson v. Robinson, supra), I find nothing in the law, i. e. the statute, to authorize the uncertain statement of this court in the Bristol case, supra

[65 Mont. 508, 211 Pac. 207], to the effect that *"we think* it the better practice to make a monthly, or other periodical, allowance" nor to authorize the court's positive statement in the Lewis case, supra, to the effect that "the better practice is to provide a monthly or other periodical allowance unless its payment would be endangered," etc.

It is not a question of what *"we think"* may be the better practice but rather a question of what the legislature has said on the subject. How reads the statute? What says the law? The answer is that it "is largely a matter of *discretion* in the district court." Lewis v. Lewis, supra.

In Howard v. Howard, 1940, 164 Ore. 689, 103 Pac. (2d) 756, 760, the court correctly said:

"An appellate court ought not interfere with the discretion exercised by the trial judge in determining whether the award should be in gross or in installments unless it is satisfied that the discretion was abused. We observe from the record that the circuit judge who tried this cause paid careful attention to the testimony, asked many of the questions, and had a conference with the parties in his chambers in an endeavor to effect a reconciliation. We know of no fixed rule for the determination of the question of whether gross or installment alimony should be awarded. We assume that the exercise of good business sense is the best means that can be pursued."

In Schouler Divorce Manual, 1944 Ed., page 391, the author says:

"There does not seem, however, to be a fixed rule in any state where the allowance may be made payable either periodically or in one lump sum by which can be determined the question of whether gross or installment payments should be made. Usually the determination is based upon the facts of the particular case, taking into consideration of the husband's ability to make payment in one manner or the other and what the best interests of the parties require."

In Nuhn v. Nuhn, supra, a wife was awarded $20,719.20 as permanent alimony in a divorce action. On appeal this court

directed that the judgment be reduced to the sum of $16,107.67 and that as so modified the judgment stand affirmed, saying, in part: "The court below in this case awarded plaintiff a sum in excess of one-half the value of defendant's property as found by the court. * * * No inflexible rule can be formulated to determine the amount to be awarded as permanent alimony in all cases. Each case must depend upon its own particular facts and circumstances."

In Cummins v. Cummins, supra (decided February 21, 1921), this court approved and affirmed a judgment awarding a wife permanent alimony in gross in the sum of $9,224.

In Detert v. Detert, 115 Mont. 313, 142 Pac. (2d) 215, 218, decided October 22, 1943, the defendant wife, on her cross-complaint, was granted a decree of divorce, a money judgment in the lump sum of $4,000 in lieu of alimony and attorneys' fees. In affirming such lump sum award, this court said: "The amount of an award in lieu of alimony in a divorce action is peculiarly within the discretion of the trial judge, and there is no fixed rule to guide the trial court in the exercise of that discretion. Nuhn v. Nuhn, 97 Mont. 596, 37 Pac. (2d) 571; Cummins v. Cummins, 59 Mont. 225, 195 Pac. 1031."

As its authority for the statement in the Bristol case, supra, that the better practice is to make a monthly, or other periodical allowance, four cases are cited being one each from the states of New York, California, Nebraska and Michigan. While it doubtless is the policy of New York to grant alimony by periodical allowance rather than a gross sum (Doerle v. Doerle, 96 Misc. 72, 159 N. Y. S. 637), yet such may not be said to be the policy of Nebraska, Michigan and California.

In the recent case of Metschke v. Metschke, 1945, Neb., 20 N. W. (2d) 238, 240, the Supreme Court of Nebraska said:

"In some divorce cases the relative earning capacities of the parties is a legitimate subject of inquiry, but in the case at bar, where the parties have always lived on a farm and each have done their full part in raising and selling crops, cattle, hogs,

poultry, milk and other products, all of such income is clearly the result of their joint efforts. * * *

"In considering small payments of alimony extending over many years, there are cases in which this may be a proper solution for the payment of alimony, but 'Generally, we do not approve of allowing alimony in the form of an annuity, or requiring the husband to pay a fixed sum each month during the life of the other party, or for an indefinite period of time.' Dunlap v. Dunlap, 145 Neb. 735, 18 N. W. (2d) 51, 54. See, also, Martin v. Martin, 145 Neb. 655, 17 N. W. (2d) 625."

In Hagerty v. Hagerty, 1923, 222 Mich. 166, 192 N. W. 553, the Supreme Court of Michigan held that under the Michigan statute, a wife petitioning for divorce from bed and board can be awarded alimony in gross. See also Tiffin v. Tiffin, supra.

In Scheibe v. Scheibe, 57 Cal. App. (2d) 336, 134 Pac. (2d) 835, 839, it is said:

"As pointed out in some of the earlier decisions, notably Ex parte Spencer, 83 Cal. 460, 23 Pac. 395, 17 Am. St. Rep. 266, and Honey v. Honey, 60 Cal. App. 759, 214 Pac. 250, 251, also in California Jurisprudence (vol. 1, p. 1010), the award made under said section 139, properly speaking, is not alimony, nor is it merely a substitute for the wife's interest in the community or separate property of the husband. It is an allowance authorized to be made by way of compensation for a wrong done to the wife, and in that sense is regarded as a penalty imposed upon the husband. ' "It proceeds upon the theory that the husband entered upon an obligation which, among other things, bound him to support the wife during the period of their joint lives, and gave to her a right to share in the fruits and accumulations of his skill; that by his own wrong he has forced her to sever the relation which enabled her to enforce this obligation, and for the wrong which thus deprived her of the benefit of the obligation, he must make her compensation. The court is to fix the measure of that compensation by 'having regard to the circumstances of the parties respectively'; those circumstances furnishing the best means for determining the extent of

her loss. \* \* \* This allowance may be entirely independent of the property then in esse."' Honey v. Honey, supra, citing Ex parte Spencer, supra, and Hogerty v. Hogarty, 188 Cal. 625, 206 Pac. 79. The power to grant such an award is incidental to the determination of a divorce action the same as is the right of a trial court to award the custody of children (Honey v. Honey, supra; Gaston v. Gaston, 114 Cal. 542, 46 Pac. 609, 55 Am. St. Rep. 86), and the award may be made in the absence of allegations or evidence showing that the husband then owned either separate or community property to which resort may be had to enforce its payment, or that he has the ability to pay. Gaston v. Gaston, supra; Honey v. Honey, supra; Ex parte Spencer, supra. Nor is it a ground for reversal that the judgment granting the award lacks the support of a finding or that no evidence was presented in that behalf. Stanton v. Stanton, 113 Cal. App. 462, 298 Pac. 524, 525. In so holding the court in the case last cited went on to say: '\* \* \* For that matter, the complaint contains no specific prayer for support. But it is to be borne in mind that an allowance of alimony or money for the support of the wife is an incident to a divorce action and the determination as to allowance of alimony is not the trial of an issue in the case. Gaston v. Gaston, 114 Cal. 542, 46 Pac. 609, 55 Am. St. Rep. 86; Hunter v. Hunter, 111 Cal. 261, 43 Pac. 756, 31 L. R. A. 411, 52 Am. St. Rep. 180; 1 Cal. Juris. p. 1011.' Furthermore, the trial court may award a gross sum (1 Cal. Jur., p. 1018); or require periodical payments; and in a proper case may provide that the latter shall start from the date the husband files his appearance in the action or from the commencement of the action (1 Cal. Jur., p. 1012, citing authorities); and the judgment may provide also that as security for the payment a lien be imposed upon the separate property of the husband. Honey v. Honey, supra. Therefore, since *the granting or refusal to grant future maintenance is a matter which lies largely within the discretion of the trial court, before a reviewing court will interfere it must clearly and af-*

*firmatively appear upon the face of the entire record that this discretion has been abused.* 1 Cal. Jur., p. 1012.

"Here there is no question as to appellant's ability to pay the award, because the money is on deposit in the joint account; and it is apparent that in view of all the circumstances shown by the entire record it cannot be held as a matter of law that the granting of the award constitutes an abuse of discretion." (Emphasis mine.)

Dickey v. Dickey, Mo. App., 132 S. W. (2d) 1026, 1031, holds that in its true meaning alimony represents "the allowance of such a sum of money in gross or in installments as will fairly and reasonably compensate her (the divorced wife) for the loss of her support by the annulment of the marriage contract."

In Read v. Read, 28 Utah 297, 78 Pac. 675, 676, the court said: "The awarding of alimony and fixing the amount thereof are questions, the determination of which rests within the sound discretion of the trial court; and, unless it is made to appear that there has been an abuse of discretion on the part of the court in dealing with one or both of these questions, its judgments and orders granting and fixing the alimony will not be disturbed. In determining these questions, the amount of property owned by the husband, his capabilities and opportunities for earning money, the health of each, and their respective ages, the station in life in which the wife has been accustomed to live, and the amount and kind of her own property, will be taken into consideration by the court. 2 Bishop, Marriage & Divorce, 1006."

In Baird v. Baird, 311 Mass. 329, 41 N. E. (2d) 5, 7, it is said:

"By the final decree alimony was awarded to the libellant in a lump sum 'in lieu of all alimony, past, present and future.' It was within the power of the court, in its sound discretion, to order alimony paid 'in one gross sum, instead of being made payable at stated periods.' Burrows v. Purple, 107 Mass. 428, 432; Brown v. Brown, 222 Mass. 415, 417, 111 N. E. 42. And, as in the matter of the decree pendente lite, in the absence of the evidence or a report of material facts, the record does not

disclose that the award of alimony by the final decree was not made in the exercise of a sound judicial discretion in the circumstances of the case. The entry of the decree imports a finding of the facts essential to support the award—an award that was within the scope of the petition. See Milne v. Walsh, 285 Mass. 151, 153, 188 N. E. 624.''

In Hooper v. Hooper, 102 Wis. 598, 78 N. W. 753, 754, 44 L. R. A. 725, the Supreme Court of Wisconsin in sustaining a gross sum alimony award said:

''Appellant's complaint seems to be wholly of the award of a gross sum of money as part of the permanent alimony. The monthly allowance of $100, it is suggested, may be materially increased, if thought best, without complaint from appellant, if the decree giving plaintiff an estate of her own out of appellant's property, be reversed. We have, with care, searched appellant's brief in vain for some good reason or the citation of some authority to support his claim. It is quite novel. It is, as we understand it, that in such a case no provision should be made for a divorced wife other than an allowance payable at stated periods, by the former husband, sufficient for her support. That was the old doctrine of the ecclesiastical courts when alimony meant an allowance for the support of a wife while living apart from her husband under a sentence of judicial separation, the relations of husband and wife in some respects still existing between the parties, the sentence being subject to termination and full marriage relations substantially subject to resumption at the will of the parties. Then no duty was recognized to support a fully divorced wife. No reason whatever exists now for such a rule. Under our statutes alimony may go with a divorce dissolving the bonds of matrimony and restoring the parties to their original situation of being strangers to each other, so far as concerns marriage relations in any sense, as well as with a divorce from bed and board. The power of the court, where the circumstances, in the discretion of the trial court, seem to demand or justify it, is as ample to allow a sum of money payable in gross as alimony, as one payable in in-

stallments or a monthly allowance. There can be no doubt about that. * * * Thus the manner in which the wife's allowance shall be secured to her is left entirely to the court to be exercised as justice seems to require, having regard to the particular facts of each case. So the question of whether the right judgment for alimony was rendered here comes down to whether proper judicial discretion was exercised in administering the statute; and on that subject the rule is that the decision of the trial court will not be disturbed unless manifestly unjust.

"It is not only permissible to make an allowance to a divorced wife payable in gross, but in many, and in the judgment of some courts, in most, cases, it is the best method of settling the pecuniary relations of the parties. The trouble and unhappiness often resulting from keeping up some sort of relation of debtor and creditor between parties who are, legally, strangers to each other yet so imbittered by previous marital relations as to render embarrassing and exceedingly unpleasant any communication of one with the other even as to strictly business matters, is well known to all persons of average experience in life. The divorced husband often feels that the obligation to pay a sum of money at stated periods to his former wife is an unjust burden and one to be avoided if possible, which feeling ordinarily grows more intense as time continues. The divorced wife is generally made to feel that she stands in a position of a mere pensioner, living from day to day on forced contributions grudgingly made by one who looks upon her as an unjust incumbrance. In that way the wrong to the wife caused by breaking up her home is made to bear unnecessarily harshly upon and disquiet her subsequent life. Observations along this line were made in Williams v. Williams [36 Wis. 362], resulting in a conclusion that where there is an absolute divorce it is advisable to end all relations between the parties, leaving them entirely independent of each other, if that can be practically done; that such unhappy controversies as this should be ended in such a way as to dissolve all financial relations as effectually as all marriage relations,

leaving nothing that will unnecessarily mar the subsequent life of the parties.

"The learned trial court proceeded on the line indicated in Williams v. Williams, and with wise comprehension of the needs of the situation solved it in such a way as to leave plaintiff practically independent of appellant."

In Van Gordor v. Van Gordor, 54 Colo. 57, 129 Pac. 226, 227, 44 L. R. A., N. S., 998, the court said:

"We have carefully examined all of the evidence, and reach the confident conclusion that it amply supports the award. From the testimony of the defendant, which in the very nature of things is quite as favorable to himself as it could be made, it appears that the net value of his estate was $14,700, one-half of which would be $7,350, only $650 less than the alimony actually decreed. Under the well established rule that appellate tribunals will not disturb judgments based on conflicting testimony, where there is sufficient in the record to support it, the award of alimony here should stand, as the discretion of the trial court seems to have been not only properly, but wisely, exercised.

"Upon the law of the case, natural justice requires that at least one-half of the property, representing the joint accumulations of husband and wife for a lifetime, should go to the wife, where she obtains a decree of divorce through the fault of the husband. Where, as in this case, the husband and wife have lived together until she is unable to perform hard labor, and have, by their joint labor, management and economy, acquired property sufficient to support them both comfortably when living together, certainly when the wife is forced by the misconduct of the husband to seek separation, she ought to receive sufficient property to support her comfortably, living alone, without reference to her ability to work and contribute to her own support. Gercke v. Gercke, 100 Mo. 237, 13 S. W. 400; Ressor v. Ressor, 82 Ill. 442."

In Jacks v. Jacks, Okl. Sup., 1945, 163 Pac. (2d) 968, 969, 970, the court said:

"The trial court, in granting a divorce to the wife, may take into consideration the loss of her right of inheritance and make proper division of the property, not only the jointly acquired property, but may allow the wife alimony out of the property of the husband. * * *

"The court heard the evidence, observed the demeanor and conduct of the parties, who were the main witnesses in the case, and upon ample evidence of extreme cruelty which is unnecessary to discuss properly granted the plaintiff a divorce. * * * The evidence was sharply conflicting thereon. He gave the plaintiff 120 acres of land and left the defendant with 160 acres, which was all he had before he married the plaintiff, and since our statute vests in the court a reasonable discretion in making division of property and the granting of alimony in divorce actions, we are of the opinion that the court properly exercised its discretion in this matter and that the same was in no wise abused. We will not disturb the judgment of the lower court unless it is clear that there was an abuse of the discretion and that the judgment is manifestly against the weight of the evidence. (Citing case.)"

In Wright v. Wright, 192 Mo. App. 633, 179 S. W. 950, 951, the court said:

"The argument of appellant's learned counsel is that, where practicable, alimony in gross should be awarded the wife, rather than an allowance of a monthly, quarterly, or annual stipend out of the husband's income, where the divorce, as in our modern practice, is an absolute one—a vinculo—restoring the parties to the state of unmarried persons. That this is a sound and wholesome doctrine is beyond dispute; for, where the circumstances permit it will doubtless be conducive to the welfare and happiness of both parties, in a great majority of such cases, that the wronged wife be provided for out of the husband's estate at the time of the divorce decree, thereby becoming independent of her former spouse and not compelled to look to him for sustenance and perhaps to take future legal steps to secure a periodical stipend awarded her. As is well said by Commissioner

Brown, in Lemp v. Lemp, 249 Mo. [295], 311, 155 S. W. [1057], 1061, Ann. Cas. 1914D, 307: 'It is just and humane, and lies at the very foundation of the policy of absolute divorce, that the innocent and injured woman be delivered from the body of her dead injury, and not be required for life to live in its atmosphere and taste its flavor with her daily bread.'

"And, on the other hand, it may be assumed that such course, where practicable, will ordinarily be the better one so far as the husband is concerned, disposing of the matter of alimony once for all, rather than leaving it in the form of a periodical obligation pursuing him through life. Touching this question generally, see what is said in: Green v. Green, 152 Ky. 486, 153 S. W. 775; Williams v. Williams, 36 Wis. 362; McGechie v. McGechie, 43 Neb. 523, 61 N. W. 692; De Roche v. De Roche, 12 N. D. 17, 94 N. W. 767, 1 Ann. Cas. 221; 2 Nelson on D. & S. sec. 903; Lemp v. Lemp, supra."

In 1935 the legislature amended section 5771, Revised Codes of 1921, by adding to the original statute a clause reading, "provided, however, that upon proof of the remarriage of a divorced wife, after the final judgment in a divorce action, the court must order a modification of the judgment by annulling the provision of the judgment directing the payment of money for the support of the wife." The amendment in no wise or manner affected the power theretofore given the court to make suitable allowance to the wife either in a gross sum or in periodical payments and in the recent case of Detert v. Detert, supra, 1943, arising long since the amendment, in approving a lump award in lieu of alimony, this court said the making thereof was "peculiarly within the discretion of the trial judge." When a judgment providing for an allowance in gross becomes final it confers upon the wife a vested interest which may not be affected by the amendment since such judgment is clothed with all the characteristics and conclusiveness of any other judgment for debt and it is not thereafter subject to revocation or modification except by consent of the parties thereto. In case there is no appeal from such judgment upon the expiration of

the time allowed therefor, the court loses jurisdiction and the litigation comes to an end. Thus does an award in gross "make but one bite of the cherry," which is one of the chief advantages of such form of allowance. On the other hand, when the judgment is for an allowance payable in installments, the jurisdiction of the court continues, the judgment is subject to modification and upon proof of remarriage of the wife, the provision for the allowance must be ordered annulled.

At the time the parties hereto intermarried the net worth of the husband's property was $8,649 while at the time of the trial it was $69,099.50 or a net increase, during coverture, of $60,450. The court found and the evidence shows that to such increase the wife by her hard work, manual labor and industry had contributed equally with her husband. Other than her interest in her husband's property, the wife has no property or means of support. There is no issue born of the marriage. By reason of the hard work performed for her husband and the ill treatment which she received at his hands, the wife is so broken and ill in mind and body that she is unable to longer perform hard work or to provide for herself the necessaries of life. By the divorce the wife lost certain most valuable rights including her inchoate right of dower which constituted an encumbrance upon the husband's title to all his lands (sec. 5813, Revised Codes; Rosenow v. Miller, 63 Mont. 451, 207 Pac. 618); her right to inherit her husband's estate (Chapter 140, subd. 2, Laws of 1941); her right to elect to take under the husband's will or to take her dower in the lands and her share in the personal estate (sec. 5819, Revised Codes) and her right to administer the estate of her husband should he predecease her.

It will not do for the court to say that upon the marriage the husband became "entitled to the earnings of his wife"; that "it is the duty of the wife without compensation to attend to all the ordinary household duties and labor faithfully in the advancement of her husband's interests" and that "alimony is in no way a property settlement." Under our statute the trial court is empowered "to make such *suitable* allowance to the wife

for her support *during her life,* or for a shorter period, *as the court may deem just,* having regard for the circumstances of the parties respectively.'' Thus was the trial judge sitting as a court of equity required to consider the equities of the case including the financial condition of the parties in making a *suitable* allowance to the wife.

It is quite evident that by being awarded a decree of divorce, for an offense of the husband, the wife, although free from fault, stands to lose most valuable rights acquired, by operation of law, as a result of the marriage unless the trial judge, in the exercise of a sound discretion, makes a suitable allowance for her. Here the equities of the case demand a final settlement and adjustment, once for all, of the domestic difficulties of these unfortunate people. This can best be accomplished by the making of an allowance in gross for otherwise the valuable rights which the wife loses upon the dissolution of the marriage inure to the benefit and advantage of the erring husband without any compensatory advantage to the wife. Thereby is the husband rewarded for his ill treatment of his wife, whom he is allowed to cast out on a dole. Thus is the wrongdoer permitted to profit from his own wrongs. An allowance payable in monthly installments to this long-suffering woman will make of her a pensioner periodically subject to further embarrassment and humiliation at the hands of a man no longer her husband who the history of this case shows will pay her not one penny that he is not, by the strong arm of the law, compelled to pay. The wife should not, at every change of the moon, be required to renew the battle for her just dues. That battle has now been waged for more than two and a half years and it is time that it should be definitely and finally concluded. An affirmance of the trial court's judgment would attain such end. Right is right and wrong is wrong. In this case the judgment of the trial judge is right and to remand the cause with directions to modify that judgment in the manner ordered by the majority opinion constitutes an unwarranted interference with the discretion of the trial court and, without reason therefor, deprives the wife of

the benefits of a money judgment to which she is entitled under the statute, evidence and findings of the court. The courts and the litigants should be done with this controversy, once for all. The judgment should be affirmed.

Rehearing denied April 25, 1946.