# Yung v. Yung.

May 18, 1943.

Lorimer W. Scott for appellant.

Charles E. Lester, Jr., and Lawrence Riedinger, Jr., for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

On the 22nd day of January, 1942, appellee, Christina Louise Yung, instituted a suit for divorce and alimony against her husband, Peter Jacob Yung, in the Campbell circuit court. Summons issued on the petition and was executed on the defendant on the 24th day of January. No answer was filed and no attorney was employed by the defendant, however, on the 12th day of May, 1942, the parties executed and filed a stipulation which provided that upon the granting of the divorce, the judgment should recite that the defendant should pay

to the plaintiff alimony as follows: $1,000 on the date of the judgment, $4,000 one year thereafter; and, in addition thereto, weekly payments in the sum of $25 payable on Saturday of each week thereafter during the remainder of plaintiff's life; and to secure the weekly payments a lien should be awarded upon certain real estate described in the petition. Upon the same date, judgment was entered granting to plaintiff an absolute divorce and awarding alimony in the amounts hereinabove set out and directing the defendant to execute and deliver to plaintiff a mortgage upon the real estate above mentioned to secure not only the weekly payment of $25 but in addition thereto the $4,000 to become due one year after the rendition of the judgment. The judgment was prepared by the plaintiff's attorney, Charles E. Lester, Jr., of Newport, Kentucky, presumably in accordance with the stipulation, but as will be noted, it contained a provision more favorable to his client than the stipulation provided, viz., that the $4,000 to become due one year after the date of the judgment was to be secured by the mortgage in addition to the weekly payments of $25. It does not appear that the judgment was submitted to the defendant, and no exception was saved or appeal granted to him. At the expiration of 60 days, the court being one of continuous session, the judgment became final and binding on the parties.

Presumably in pursuance of the judgment, Mr. Lester prepared a mortgage which was executed by Mr. Yung who was still without the services of an attorney. The mortgage not only secured the weekly payments of $25 and the $4,000 payment to be made one year from the date of the entry of the judgment, but contained a further provision (which was not directed by the judgment) to the effect that if any payment due under the judgment should become delinquent for more than seven days, all of the weekly payments should be precipitated upon the basis of the mortgagee's life expectancy at the time of the execution of the mortgage, less such weekly payments as might have been paid to the date of the delinquency. The sum of $31,200 was the stipulated amount to become due less credits thereon in the event of precipitation. The mortgage carried a further provision which was not required by the judgment, viz., that the mortgagor at all times was to keep the improvements on the real estate insured against damage by fire in a sum of not less than $20,000, and against damage by tornado,

wind storm, and cyclone in a sum of not less than $10,000, and upon his failure to do so, the entire unpaid amount of the judgment was to be precipitated in the same manner as was provided for delinquency in the payments aforesaid. Within less than thirty days after the execution of the mortgage, towit, June 8, 1942, although no payment then had been delinquent seven days, Mr. Lester prepared a petition for foreclosure of the mortgage. The petition remained in his office until it was filed September 15, 1942. In the petition precipitation was claimed by reason of failure of the mortgagor to comply with the provision in respect to insurance, and additionally, by reason of his being ten days delinquent in the weekly payment due September 5. Summons was issued on the petition and served on the defendant on September 16, 1942. Thereafter, Mr. Yung consulted many times with his wife's attorney, and, according to the former's testimony, Mr. Lester agreed to withhold prosecution of the foreclosure suit until such time as might be necessary for the parties to amicably settle the controversy. Offers of compromise proposed by the defendant were rejected by the plaintiff and on October 10, 1942, Mr. Lester notified the defendant in writing his client insisted on the prosecution of the suit but that he would withhold the entry of judgment until October 17, 1942. One of the offers of compromise made to the attorney admittedly was not communicated by him to his client. Mr. Yung testified that he conferred with Mr. Lester on two occasions between October 10 and October 17 and was assured by him that judgment would not be entered until further notice and that he would submit to appellee an additional offer of compromise proposed by the appellant. This testimony was denied by Lester. Judgment and order of sale was entered on October 21, 1942. The order of sale directed the master commissioner to make the sale ''at the courthouse door in Newport, Kentucky, on any Wednesday following the 4th of November, 1942, which may be designated by plaintiff or her attorney of record herein, by notice to the said Master Commissioner    *    *    *.''

Mr. Yung testified he did not employ an attorney because he was relying on Mr. Lester's representations to him that no additional steps would be taken until further notice. Mr. Lester prepared the judgment and had it entered without saving the defendant an exception or granting him an appeal to this court. He then

waited until the day the judgment became final on which date, to-wit: December 22, 1942, he directed the master commissioner to advertise and sell the property. Mr. Yung did not know the judgment had been entered until after it became final. He then filed his petition for a new trial under section 518, subsection 4, Civil Code of Practice, alleging that fraud had been practised by the successful party in obtaining the judgment foreclosing the mortgage and ordering sale of the mortgaged property. Previous to that time, Mr. Yung had not employed counsel and had not consulted any attorney other than Mr. Lester, except on one occasion he casually asked another attorney if a court would enter judgment against him under the circumstances related above. This conversation occurred in the lobby of a bank in Newport and whatever advice was given on that occasion was not in the capacity of an attorney advising his client.

Testimony was taken orally and by deposition, appellant testifying to the facts related and appellee and her attorney contradicting him in all matters pointing to fraud. If, in reliance on the representations made to him by Mr. Lester, appellant did not employ an attorney and did not make defense to the action and judgment was entered without his knowledge, the court should have granted him a new trial permitting him to defend the action and seek reformation of the mortgage if he so desired. If, on the other hand, the attorney for appellee made no agreement with appellant to withhold the judgment after he notified him on October 10 that it would be withheld until October 17, appellant is without redress. The chancellor concluded that no fraud was perpetrated and his finding in that respect will not be disturbed unless the record raises more than a doubt in our minds as to the correctness of his decision. If, on the other hand, more than a doubt is raised in our minds as to its correctness, it is our duty to reverse the judgment and direct a new trial to be had on such issues as hereafter may be made. Katz v. Earl & John Scott, 229 Ky. 738, 17 S. W. (2d) 1024. No more than a doubt would be raised in our minds as to the correctness of the decision of the chancellor if the only evidence of fraud were contained in the testimony of appellant concerning the representations he claims were made to him by appellee's attorney after he received the letter of October 10, 1942. But the conduct of appellee's attorney from the filing of the suit for divorce to the date the judg-

ment in the foreclosure suit became final leads us to the conclusion that appellant's version of the alleged misrepresentations is correct. The record discloses a successful endeavor to convert the stipulation for future weekly payments into a judgment for a gross sum in excess of $35,000. Mr. Lester did not prepare the alimony judgment in accordance with the terms of the stipulation. The discrepancy was in his client's favor and was one which could easily be overlooked by a busy court. In preparing the mortgage he inserted the precipitation clauses without calling appellant's or the court's attention to the changes. This conduct on his part was wholly unwarranted by the judgment of the court and cannot be excused upon the ground that the defendant executed the writing or read it before placing his signature thereto. The defendant was not represented by an attorney and no doubt was relying on Mr. Lester to treat him fairly in drafting the mortgage.

As a general rule on decree for absolute divorce, alimony should be allowed to the wife in a lump sum if the character of the husband's estate will permit it to be done. Green v. Green, 152 Ky. 486, 153 S. W. 775; Lyon v. Lyon, 243 Ky. 236, 47 S. W. (2d) 1072, 1073; Turner v. Ewald, 290 Ky. 833, 162 S. W. (2d) 181. It is only in cases where the chancellor determines it is best for both parties, that alimony should be paid in future installments. The judgment of the court provided for the payment of alimony in future installments and the precipitation clause in the mortgage had the effect of changing the chancellor's decree in that respect to one adjudging alimony in a gross sum. Such a hardship could not have been anticipated by the court in rendering the judgment; nor by the parties in signing the stipulation, and the alteration was in fraud of appellant's rights. Appellee's attorney was very careful not to attempt to enforce the judgment of foreclosure and the order of sale until it became final and appellant apparently was without redress. This conduct leads us to the conclusion that appellant was misled by representations on the part of appellee's attorney that he would not enter the judgment without giving appellant an opportunity to defend the action in the event an amicable settlement could not be made. Mr. Lester's law firm had been legal advisers to Mr. Yung for many years, and it was only natural that he would have reposed confidence in a member of the firm to treat him fairly although representing his adver-

sary. Both the action for divorce and the one foreclosing the mortgage were tried in equity. The maxim "He who comes into equity must come with clean hands," is applicable to the facts of the case. Under the circumstances, and with the maxim in mind, we have no doubt but that the chancellor erred in dismissing appellant's petition for a new trial.

The judgment is reversed with directions that it be set aside and another be entered granting appellant a new trial and for proceedings not inconsistent with this opinion.

Whole court sitting.