**In Re: J.W. BACKER, Debtor.**

**J.W. Backer, Plaintiff–Appellant,**

v.

**Manning Family Trust; Ronald C. Manning; Shona P. Manning, Defendants–Appellees.**

No. 01–5312.

United States Court of Appeals, Sixth Circuit.

Oct. 22, 2002.

Before KRUPANSKY and CLAY, Circuit Judges; GWIN, District Judge.[*]

CLAY, Circuit Judge.

Plaintiff, J.W. Backer, appeals from the district court's order dismissing Plaintiff's complaint filed against Defendants, the Manning Family Trust, Ronald C. Manning, and Shona P. Manning, in this ad-

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

versary proceeding brought by Plaintiff in connection with his voluntary petition filed under Chapter 11 of the bankruptcy code, 11 U.S.C. § 1101–1174. Plaintiff filed the adversary proceeding seeking a declaratory judgment that the forbearance agreement entered into by Plaintiff and Defendants precluded Defendants from maintaining any collection efforts against Plaintiff, and later amended the complaint to allege fraud by Defendants as well. For the reasons set forth below, we **AFFIRM** the district court's order.

## BACKGROUND

### Procedural History

On February 27, 1996, Ronald Manning, individually and on behalf of the Manning Family Trust, obtained a judgment in the amount of $1,484,000 against Plaintiff in the Fayette Circuit Court, Fayette County, Kentucky. Thereafter, on April 15, 1998, Plaintiff filed a voluntary petition under Chapter 11 of the bankruptcy code. On July 13, 1998, Plaintiff filed an adversary proceeding seeking, among other things, a declaratory judgment that a forbearance agreement that the parties had executed in March 1996 precluded Defendants from maintaining any collection efforts against Plaintiff. Pursuant to an agreed order from the bankruptcy court, the parties filed cross-motions for summary judgment on the issue of whether the forbearance agreement was ambiguous and subject to two or more interpretations, rendering parol evidence necessary to aid in the document's interpretation.

On February 18, 1999, the bankruptcy court issued its order finding that the forbearance agreement contained no ambiguity, and that there was no need for additional evidence to aid in its interpretation. The court ruled that the document clearly was a forbearance agreement and not a settlement agreement.

Subsequently, Plaintiff filed a motion to amend his complaint, which the bankruptcy court granted. The amended complaint alleged that Manning had made representations to Plaintiff that the forbearance agreement would constitute an agreement whereby Defendants would forgo any further collection efforts against Plaintiff, and that because Defendants were now making contrary representations, the earlier representations constituted fraud. Defendants moved to dismiss the amended complaint. The district court granted the motion to dismiss, finding that the record did not support a finding of fraud.

Plaintiff appealed that order to the district court, which affirmed on January 29, 2001. Plaintiff then filed this timely notice of appeal on February 27, 2001.

### Facts

As noted above, Manning had obtained a $1.484 million judgment against Plaintiff for breach of a contract to sell thoroughbred horses to Manning. Before the time to appeal expired, the parties entered into a forbearance agreement. That agreement, which was entitled "Forbearance Agreement," provided:

This Forbearance Agreement made and entered into this_____ day of March, 1996, by and between Ronald C. Manning and the Manning Family Trust (hereinafter referred to as Manning) and John W. Backer, D.V.M. (hereinafter referred to as Backer):

### WITNESSETH

WHEREAS, Manning has filed a Notice of Judgement in the Fayette County Court Clerk's Office, the Bourbon County Court Clerk's office, and the Woodford County Court Clerk's Office on said Judgment; and,

WHEREAS, Backer has certain assets or claims to assets upon which Manning has issued garnishments or upon which Manning is prepared to Levy Execution in order to satisfy said Judgment;

NOWTHEREFORE, for and in consideration of the mutual covenants and conditions contained herein, the parties hereto, hereby agree as follows:

BACKER AGREES AS FOLLOWS:

1. Manning shall be entitled to receive and have all of the funds on deposit in the hands of Clyde L. Stapleton, Master Commissioner of the Fayette Circuit Court, in Civil Action No. 90–CI–3506, and Civil Action No. 93–CI–1774 (which is consolidated with Civil Action No. 93–CI–3935) to the exclusion and claim of Backer.

2. Manning shall be entitled to proceed against the $550,000.00 supersedeas bond and the surety on said bond (Cumberland Surety Insurance Company, Inc.) in order to satisfy its Judgment.

3. The 1995 Female STAR/NUREYEV filly foal, shall be sold privately for an amount and upon such terms as Manning and Backer may agree, with the net proceeds of that sale to be divided sixty-six and two-thirds (66⅔) to Manning and thirty-three and one-third (33⅓) to Backer. There is presently being negotiated a private sale which if not successful, the parties agree that this yearling will then be sold either privately or publicly under such terms and conditions as the parties may agree. In the event the parties are unable to agree with regard to any of the terms or conditions of a sale of the yearling, then Eaton Sales Company shall be employed by the parties to arbitrate the dispute. In the event Backer shall insure the FEMALE STAR/ NU-

REYEV filly foal then he may insure it for his interest and upon loss any insurance proceeds shall be paid to Backer. In the event Manning shall insure the FEMALE STAR/NUREYEV filly foal then he may insure only his interest and upon loss the insurance proceeds shall be his.

4. Backer will not file for relief under the United States Bankruptcy Code for at least ninety (90) days from following the transfer of the last item of property to Manning pursuant to this agreement.

. . . .

6. Backer agrees that he will not file an appeal of the Judgement issued by the Fayette Circuit Court, Third Division, on February 27, 1996.

MANNING AGREES AS FOLLOWS

7. Except for the property and/or assets hereinabove described which Backer shall immediately make available to Manning, Manning hereby agrees to forbear any other collection efforts against Backer.

. . . .

BOTH PARTIES AGREE:

10. This is not a settlement but is a Forbearance Agreement given Backer's present financial condition and the prospect of obtaining any further recovery against Backer on the Judgment held by Manning.

In WITNESS WHEREOF the parties hereto and hereunto set their hand, this the ____ day of March 1996.

(J.A. at 45–48.) After the forbearance agreement was executed, Plaintiff twice tried to have Manning sign an addendum to the agreement that would have released Plaintiff from his liability on the state

court judgment, but Manning refused to sign.

Pursuant to the forbearance agreement, Defendants pursued actions against Bank One, and Stoll, Keenon and Park, and Cumberland Surety Insurance Company, Inc. as a surety on the bond against Plaintiff, but was unsuccessful in those efforts against all three.[1] In response, Defendants resumed collection efforts against Plaintiff. Manning executed a document, assigning to his wife, Shona Manning, the judgment that Manning and the Manning Family Trust held against Plaintiff. On December 29, 1997, Shona Manning obtained an execution order and seized Plaintiff's horses. On January 16, 1998, Shona Manning filed a notice of judgment lien on Plaintiff's real estate in Fayette County, contending that Plaintiff's farm had increased in value as a result of rezoning, thus justifying resumption of debt collection. In response to the renewed collection efforts, Plaintiff filed for Chapter 11 bankruptcy and sought a declaratory judgment that Defendants breached the forbearance agreement by pursuing collection efforts.

## DISCUSSION

On appeal, Plaintiff makes two principal arguments. First, he contends that the district court erred in affirming the bankruptcy court's determination that the forbearance was not a settlement and that extrinsic evidence to the contrary was inadmissible under the parol evidence rule. Second, he contends that his amended complaint should not have been dismissed. Defendants counter that the bankruptcy court and district court did not err in finding that the forbearance agreement was not a release or settlement as to the

judgment against Plaintiff, and that Plaintiff's amended complaint alleging fraud was properly dismissed. We address these issues in turn.

## I. The Forbearance Agreement

We review a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir.2002).

■ Plaintiff contends that Manning and the Manning Family Trust agreed to "forbear" any other collection efforts against Plaintiff. He argues that this implies a perpetual forbearance, precluding Defendants from now seeking to enforce the state court judgment against him or from proceeding with any collection efforts against Plaintiff. He further contends that if Manning and the Manning Family Trust did not agree to forbear collection efforts forever, then the agreement is necessarily ambiguous and Plaintiff is entitled to an evidentiary hearing on whether the parties intended the agreement to be a settlement or a release of the claims against Plaintiff or merely a forbearance. Defendants counter that the language in the forbearance agreement is not ambiguous; it merely requires forbearance of collection efforts until such time as Plaintiff's financial condition improves or changes. Defendants contend that in the absence of a specific time limitation, Kentucky law holds that a forbearance should be interpreted as being for a reasonable time. We agree with Defendants that the document is unambiguous and should be interpreted to mean that he agreed to forbear collection efforts against Plaintiff for a reasonable time.

---

1. Specifically, the Kentucky Court of Appeals held on January 16, 1996, in an unpublished opinion, that Cumberland was not liable to

Defendants on the bond. (J.A. at 171–182.) Defendants were also unsuccessful in efforts against Bank One and Stoll, Keenon & Park.

Under Kentucky law, if a contract has a plain meaning and it can be understood without resorting to parol evidence, such evidence is inadmissible to determine the meaning of the contract. *See Friction Materials Co., Inc. v. Stinson,* 833 S.W.2d 388, 391 (Ky.Ct.App.1992). In making this determination, a court should take care not to create ambiguity where none exists. *Id.* Moreover, a contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. *Overberg v. Lusby,* 727 F.Supp. 1091, 1093 (E.D.Ky.1990).

The crux of this case is determining what the parties intended by entering into an agreement that provides that Manning and the Manning Family Trust will "forbear" collection efforts against Plaintiff provided Plaintiff performs the conditions outlined in the forbearance agreement. It is undisputed that Plaintiff performed all of his duties in the agreement. However, Plaintiff essentially contends that the language in the agreement operated not only as a forbearance but as a settlement or release of Defendants' rights to collect against Plaintiff because the plain meaning of the agreement requires an interpretation of *perpetual* forbearance on Defendants' part. Plaintiff points to the forbearance agreement's statement that "Manning ... agrees to forbear *any other* collection effort" for support. Plaintiff focuses on the words "any other" coupled with the actual consideration he provided to buttress the interpretation that Defen-

dants gave up all collection rights that they possessed.

We are unpersuaded by Plaintiff's argument. First of all, paragraph 10 of the forbearance agreement specifically states that "[t]his is not a settlement but a Forbearance Agreement given Plaintiff's present financial condition and the prospect of obtaining any further recovery against Plaintiff on the Judgement held by Manning." It is meant as a forbearance and not a settlement or permanent release of the claims.[2] *Friction Materials Co.,* 833 S.W.2d at 391.

Second, although there is no explicit time condition expressed in the agreement, such a condition is implied in paragraph 10, which shows that Defendants could commence action after Plaintiff's financial condition changed or after a change in the prospect of recovery from Plaintiff or within a reasonable time. The parties appear to agree that because of rezoning of certain property Plaintiff owned, the value of the property increased. Defendants now rely on this occurrence as the event that changed Plaintiff's financial condition.

Furthermore, Kentucky law is clear that "in the absence of circumstances showing it to be perpetual, a forbearance to sue for an indefinite time is regarded as calling for a reasonable period." *Mock v. Trs. of First Baptist Church of Newport,* 252 Ky. 243, 67 S.W.2d 9, 11 (Ky.1934); *see also Vansant v. Vansant,* 253 Ky. 399, 69 S.W.2d 724, 725 (Ky.1934); 3 Richard A. Lord, Williston on Contracts § 7:46, at 740 (4th ed. 1992) ("[I]t is generally said that

---

**2.** Moreover, ordinary and legal definitions of "forbearance" support Defendants' interpretation. A forbearance means "a delay in enforcing or a suspension of or a refraining from enforcing debts, rights of action, rights, privileges, claims or obligations." Webster's Third New Int'l Dictionary 886 (3d ed.1993). It is the "[r]efraining from doing something that one has a legal right to do. Giving of

further time for repayment of obligation or agreement not to enforce a claim at its due date." Black's Law Dictionary 644 (7th ed.1999). "Forbearance from exercising a right or doing an act which one has a right to do is legal consideration." 3 Richard A. Lord, Williston on Contracts § 7:43, at 677 (4th ed.1992).

a request for forbearance which does not specify the time for which forbearance is requested will be interpreted as requesting forbearance for a reasonable time.").

Nothing in the agreement indicates that it was intended to be a perpetual forbearance. The agreement specifically stated that it was a not a settlement but a forbearance agreement. According to the document, Manning and the Manning Family Trust agreed to forbear collection considering the poor financial condition of Plaintiff at the time and the prospect of any further recovery from him in the future. This language does appear to leave the door open to Defendants to recover from Plaintiff in the event the latter's financial situation changes. With no express time limit regarding the period of forbearance, Kentucky case law suggests that a reasonable time limit should be read into the agreement. Therefore, we agree with the bankruptcy court that no extrinsic evidence is necessary to consider the parties' intent, and denial of Plaintiff's declaratory judgment request was proper.

## II. The Amended Complaint

After the bankruptcy court ruled that the forbearance agreement was not a settlement or a release, Plaintiff moved to amend his complaint. Plaintiff alleged that following the judgment against him in 1996 in favor of Manning and the Manning Family Trust, he and his attorneys met with Manning and his attorneys between February 26 and March 22, 1996. Plaintiff alleged that during one such meeting and in his presence, one of his attorneys, Kenneth Smith, asked one of Manning's attorneys, William Dykeman, why the document was labeled a forbearance agreement, instead of a settlement agreement. According to the complaint, Dykeman told him that there was really no difference between the terms as it relates to Plaintiff

because as to Plaintiff, "it was over." (J.A. at 252.) Dykeman also allegedly explained that he did not want to label the agreement a settlement agreement because to do so might limit Defendants' separate lawsuits against Stoll, Keenon & Park and Bank One.

The amended complaint also referenced a letter dated March 12, 1996 from Manning's attorneys to Plaintiff's attorneys, which stated that Manning and the Manning Family Trust would not pursue collection efforts against Plaintiff if the latter agreed to the terms of the letter. Those terms were made part of the forbearance agreement. Further, the amended complaint alleges that before signing the agreement, Plaintiff looked up at Manning and asked him, " 'When I sign this, it's over?" ' (J.A. at 252.) He alleges that Manning replied, "It's over," and Plaintiff, in reliance, then signed the agreement. (J.A. at 253.) Plaintiff alleges that the representations made by Manning and Manning's counsel were false and fraudulent or made with reckless disregard for the truth. He alleges that he relied on these representations in signing the forbearance agreement and that doing so caused him considerable damages.

In granting Defendants' motion to dismiss, the bankruptcy court found that Plaintiff had presented some evidence, but that the evidence did not rise to the level of clear and convincing evidence of fraud. The court found that, at most, what may have occurred was a misunderstanding on the part of Plaintiff and his counsel. The district court affirmed, explaining that it had reviewed the parties evidence and likewise found no reasonable grounds to believe that the forbearance agreement was intended to have any greater legal effect than what the language of the document indicates.

Plaintiff contends that the bankruptcy court erred in dismissing his amended complaint, which alleged fraud, and that the district court erred in affirming the dismissal. Plaintiff contends that the bankruptcy court granted Defendants' motion to dismiss without giving Plaintiff an opportunity to conduct discovery on his claim.

Defendants raise several issues to defeat Plaintiff's claim that his complaint should not have been dismissed. They contend that to the extent there was any reliance on Plaintiff's part, it was not on any of Manning's representations, but rather on Plaintiff's own attorneys, who told him to sign a document that expressly stated this is a "forbearance" and not a "settlement." Defendants contend that even assuming some misrepresentations were made, this still would not amount to fraud because the terms of the written document are completely contrary to the representations which Plaintiff claims constitute fraud. Defendants also argue that to the extent Plaintiff was denied discovery, it is his own fault because he never requested it.

■ An initial issue for the Court is whether the bankruptcy court dismissed this case under Defendants' Rule 12(b) motion to dismiss or whether it converted the motion into a summary judgment motion. *See* Fed.R.Civ.P. 12(b) (permitting court, upon receipt of evidence outside of pleadings by a party, to convert Rule 12(b)(6) motion into Rule 56 motion upon giving notice to parties). The issue is particularly relevant in this case because the parties were not notified by the bankruptcy court of an intention to convert Defendants' motion. Although Federal Rule of Civil Procedure 12(b) permits a district court to grant summary judgment *sua sponte* where the court is presented with materials outside the pleadings, we have ruled that failure of the district court

(or bankruptcy court, as the case may be) to notify the parties of its intention to convert a motion to dismiss to a motion for summary judgment is reversible error where such conversion is tantamount to unfair surprise. *See Helwig v. Vencor, Inc.,* 251 F.3d 540, 552–53 (6th Cir.2001) (*en banc*); *see also Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (6th Cir.1995) (noting that this Court generally discourages granting summary judgment *sua sponte,* particularly when the court does not give advance notice to the adversely affected party). For example, if references by the adversely affected party to summary judgment run throughout the record, there is probably no element of surprise. *See Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 572 (6th Cir.2001). Here, the parties were not notified of a conversion to summary judgment, and the parties' briefs to the bankruptcy court in support of and opposition to Defendants' motion make no mention of summary judgment. Therefore, it seems that if indeed the bankruptcy court's ruling was one of summary judgment, Plaintiff was subjected to unfair surprise.

Although the parties and the district court have referred to, and treated, the bankruptcy court's memorandum opinion as one granting summary judgment, the bankruptcy court never expressly stated that it was converting Defendants' motion to dismiss into a motion for summary judgment. In fact, the opinion concludes as follows: "Accordingly, the court is of the opinion the motion of the defendants to dismiss the Amended Complaint should be sustained." (J.A. at 313.) The parties and the district court appear to have inferred that the bankruptcy court implicitly converted the motion because it referred to materials other than the pleadings. Specifically, the opinion referenced the affida-

vit of Kenneth W. Smith, co-counsel for Plaintiff, which was attached to the amended complaint as Exhibit A. The opinion also mentioned the letter of Ronald A. Newcomer, attorney to Manning, which was attached to the amended complaint as Exhibit B.[3] The bankruptcy court's opinion apparently took at least the affidavit into consideration in drawing its conclusion:

> Assuming the allegations in the Amended Complaint are true and the averments of attorney Smith attached as Exhibit "A" to the Amended Complaint are likewise true, there is no clear and convincing evidence of fraud. There is evidence at best of a misunderstanding on the part of Dr. Backer and his counsel.

(J.A. at 312.) The language therein is ambiguous as to the bankruptcy court's intent, because it does not explicitly use the language of a Rule 12(b) motion to dismiss (i.e., plaintiff failed to allege all the elements of fraud with particularity), or a Rule 56 motion for summary judgment (i.e., no material facts at issue; no claim as a matter of law). However, we find that the bankruptcy court adjudicated the matter as a motion to dismiss under Rule 12(b)(6) for at least two reasons. First, the bankruptcy court makes no mention of summary judgment in the opinion, nor does it use language or cite standards ordinarily used in orders granting summary judgment. Instead, it states that "[a]ssuming the allegations in the Amended Complaint are true and the averments of attorney Smith attached as Exhibit "A" to the Amended Complaint are likewise true ...", which is ordinarily seen in orders granting motions to dismiss under Rule 12(b)(6). *See, e.g., Helwig,* 251 F.3d at 553 ("[In a Rule 12(b)(6) motion] we 'must construe the complaint in a light most favorable to the plaintiff, and *accept all of [the] factual allegations as true.*' ") (emphasis added) (quoting *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998)).

Second, it is not improper for a lower court to consider materials attached to pleadings, if the content of such materials merely mirrors allegations set forth in the pleadings. Rather, such materials are considered part of the pleadings. *See Song v. Elyria,* 985 F.2d 840 (6th Cir.1993) (holding that affidavits attached to plaintiffs' complaint verifying that statements in complaint were true were not outside pleading because affidavits added nothing new and only reiterated contents of the complaint); *see also Plassman v. City of Wauseon,* 85 F.3d 629, No. 94–07407, 1996 WL 254662, *3–4 (6th Cir. May 14, 1996) (unpublished) (holding that district court's consideration of proceedings and correspondence attached to plaintiffs' amended complaint did not convert motion to dismiss into summary judgment motion).

Here, although Plaintiff attached an additional affidavit to his brief in opposition to Defendants' motion to dismiss, the bankruptcy court apparently did not take the additional affidavit into consideration when issuing its decision; the court only mentioned the exhibits attached to Plaintiff's amended complaint. Therefore, we believe that the bankruptcy court granted a Rule 12(b)(6) motion, not summary judgment, to Defendants, and we will review

---

**3.** Defendants correctly observe that Plaintiff's opposition memorandum also referenced part of Plaintiff's deposition from the earlier case, an item that is arguably outside the pleadings (as it was not attached to the amended complaint). However, conversion to summary judgment only occurs when the court takes evidence outside the pleadings into consideration, but a court is free to ignore it. Here, the bankruptcy court only mentioned items attached to Plaintiff's amended complaint, which are properly considered pleadings; therefore, there exists no evidence that the Bankruptcy Court decided to convert the motion into summary judgment.

the court's ruling under this procedural posture.

We review a lower court's grant of a Rule 12(b)(6) motion to dismiss *de novo. Goad v. Mitchell,* 297 F.3d 497, 500 (6th Cir.2002). In doing so we " 'must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." ' *Helwig,* 251 F.3d at 553 (quoting *Bloch,* 156 F.3d at 677). However, "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). As we have recognized, "[g]eneralized and conclusory allegations that [a defendant's conduct is fraudulent] do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir.2001) (citing *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982)).

■ "In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Serv. Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky.1999). Clear and convincing evidence requires a party with the burden of proof to present evidence that is more persuasive than a mere preponderance, but proof which need not rise to the level of beyond a reasonable doubt. *Hardin v. Savageau,* 906 S.W.2d 356, 357–58 (Ky. 1995). Of the elements, it is clear that Plaintiff's complaint has not established the elements of material representation and reliance.

### a. *Material Misrepresentation.*

Generally, Kentucky law does not recognize misrepresentations of law, only misrepresentations of fact, unless a confidential or trust relationship exists between the parties. *Moseley v. Owensboro Mun. Hous. Comm'n,* 252 S.W.2d 880, 881 (Ky. 1952) ("A false representation as to law does not amount to fraud, in the absence of a trust or confidential relation between the parties."); *see also Compressed Gas Corp., Inc. v. U.S. Steel Corp.,* 857 F.2d 346, 351 (6th Cir.1988) (holding that sending potential consumer copy of state regulations with cover letter erroneously explaining terms in such regulations, "to the extent that it is a misrepresentation of law, is not actionable in Kentucky"); *Fields v. Life & Cas. Ins. Co. of Tenn.,* 349 F.Supp. 612 (E.D.Ky.1972) (holding that misrepresentation of insurance agent to plaintiff that continuing to pay premiums on ex-husband's policy would entitle her to continued beneficiary rights is a mere misrepresentation of law and not actionable). Extrapolating from the general rule, "it has been held that, as a rule, fraud cannot be predicated on misrepresentations as to the legal effect of a written instrument ...." 37 Am.Jur.2d Fraud and Deceit § 99 (citing *Mut. Life Ins. Co. of N.Y. v. Phinney,* 178 U.S. 327, 20 S.Ct. 906, 44 L.Ed. 1088 (1900)).

Plaintiff alleges that the misrepresentations consist of Manning's attorney's statement to Plaintiff that, as to him, there was no difference between forbearance and settlement, and Manning's statement, "it's over." These statements can, at best, be construed as statements regarding the legal effect of the document as to Plaintiff, or perhaps a prediction as to the long-run practical effect for Plaintiff, i.e., that Plaintiff would never have sufficient funds or assets in the future to make it worthwhile for Defendants to proceed against such additional assets. No misrepresentations of fact are apparent from these statements, and therefore the statements are not actionable as fraud.

532

### b. Reliance.

A second problematic aspect in Plaintiff's allegations of fraud is that, even if Manning's statements were actionable misrepresentations, Plaintiff apparently did not justifiably rely on such misrepresentations. In analyzing reliance, the law presumes that, when the parties are equally well-informed as to the law and facts, then reliance upon the other party's statements of law is not justified. *See Phinney,* 178 U.S. at 341 (holding that insurance agent's statement that policy had lapsed was one of law, and insured was equally responsible for knowing insurance law as agent). Thus, when both parties are adequately represented by counsel, each party must rely on his or her attorney's representations of law, not the opponent's. *Cf. Yung v. Yung,* 294 Ky. 369, 171 S.W.2d 1017, 1019 (Ky.1943) (holding that reliance requirement was satisfied where party read and signed agreement but was not represented by counsel because he "no doubt was relying on [opposing counsel] to treat him fairly"). Here, Plaintiff had two attorneys present, and he was supposed to rely on them, not on Manning or Manning's counsel; therefore, any reliance on Manning's representation that "it [was] over" does not support justifiable reliance.

Therefore, we cannot conclude that Plaintiff has met his burden of stating a claim of fraud with particularity, as required by Federal Rule of Civil Procedure 9(b), and find that dismissal was proper under Rule 12(b)(6).

### CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**